826 A.2d 1 (2003)
J.C., Formerly Known as JA.S., Appellee,
v.
J.S., Appellant.
Superior Court of Pennsylvania.
Argued March 11, 2003.
Filed April 30, 2003.
Reargument Denied July 10, 2003.
*2 J.S., appellant, pro se.
Carol L. Hanna, Bethel Park, for appellee.
BEFORE: TODD, BENDER and KELLY, JJ.
OPINION BY BENDER, J.:
¶ 1 J.S. (Father) appeals from an order that denied his petition to modify support and relieve him of any support obligation for D.S., who was born on May 18, 1989, during Father's marriage to J.C. (Mother),[1] although D.S. is not Father's biological child. Father raises issues concerning the trial court's application of the doctrine of paternity by estoppel. Finding that Father's issues are without merit, we affirm.
¶ 2 In May of 2001, Father filed a motion to compel blood tests to determine whether he was D.S.'s biological father. After a hearing, Father's motion was denied. Father then petitioned for a modification of his support obligation for D.S. A court order issued on January 31, 2002 directed that a hearing be held before a hearing officer to determine "legal paternity." Following the hearing held on March 22, 2002, the hearing officer issued a recommendation finding that Father was D.S.'s legal father and that the previously entered child support order should be continued. Father filed exceptions, which were denied by the trial court following review of the parties' briefs and after argument. The hearing officer's recommendation became a final order of court.
¶ 3 In its opinion, the trial court set forth the following recitation of the facts as they relate to the issues raised on appeal:
The parties to this matter are the formerly married parents of two children, the eldest of whom is the subject child in these proceedings, [D.S.], now age 13. At the hearing before Judge Sasinoski, the following evidence was adduced regarding the parties' marriage and divorce:
During the parties' marriage and about 6 months prior to the May, 1989 birth of their first child, [D.S.], the Father discovered the Plaintiff, [J.C.] (hereinafter, "Mother"), engaged in an extramarital affair in the parties' home. The parties thereafter separated for a few days, then reconciled and continued in the marriage. The Mother subsequently gave birth to [D.S.] and the parties also had their second child, [A.S.], born May 22, 1992. They continued to live as an intact family until they separated in 1995 and Mother commenced divorce proceedings in 1996.
The parties entered into an August 1996 consented Order for Father's payment of child support for the two children. Thereafter, two more consented support Orders were entered in modified amounts. The Father admits that in January or February, 1997, he learned from Mother that [D.S.] was not his biological son. The Father also admits, and in fact is justly proud of the fact that he continued to treat [D.S.] as his son in every way. He supported him financially, he acted as a father to [D.S.] in all respects, he even filed a Custody *3 Complaint, seeking primary custody of both children. Father continued, at the time of the hearings in this matter, to have regular custodial time with [D.S.] and enjoys "a good relationship" with him.
Trial Court Opinion (T.C.O.), 10/7/02, at 2 (citation to the record omitted).
¶ 4 Based on the above, the trial court determined that although Mother misled Father "`for a period of no less than six years' ... Father continued to act as [D.S.]'s fathersupporting [D.S.] emotionally, physically, and financially, and he continues to do so today." Id. at 3. The trial court further noted that even at least four years after knowing that he was not D.S.'s biological father and having harbored suspicions about D.S.'s paternity because of Mother's affair, Father "acted at all times and in all ways as [D.S.]'s father and he is the only person [D.S.] knows as `father.'" Id. The trial court pointed out that Father even instituted a custody action seeking primary custody of both children. Id. Accordingly, the trial court concluded that this factual scenario falls within the confines of the doctrine of paternity by estoppel and that Father's support obligation remains in effect.
¶ 5 Father now appeals to this Court, and raises the following three issues for our review:
1. Whether the hearing officer and court below erred in finding that [Father] is the "legal" father of the minor child when it has been admitted that he is not the biological father?
2. Whether the hearing officer and trial court below erred in dismissing [Father's] Petition to Modify an Existing Support Order where there was a judicial admission that [Father] was not the "biological" father and where the Petition alleged that the [Mother] knowingly misled the [Father] into believing that he was the "biological" father of the minor child?
3. Whether the hearing officer and trial court below erred in finding that the [Father] is estopped from contesting paternity where [Father] was misled into believing that he was the "biological" father of the minor child?
Brief of Father at 4.
¶ 6 Initially, we note that "[o]ur general standard of appellate review in child support matters is an abuse of discretion standard." Bowser v. Blom, 569 Pa. 609, 807 A.2d 830, 834 (2002). Moreover, an abuse of discretion is "[n]ot merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence of record," then discretion has been abused. Id.
¶ 7 In the case presently before this Court, we recognize that despite the fact that D.S. was conceived and born while the parties were married to each other, the rebuttable presumption of paternity is not applicable since the parties no longer have an intact marriage to be preserved. Weidman v. Weidman, 808 A.2d 576, 577 (Pa.Super.2002), appeal denied, 572 Pa. 750, 816 A.2d 1103 (2003) (citing Brinkley v. King 549 Pa. 241, 701 A.2d 176 (1997)). However, we must then address whether the doctrine of paternity by estoppel applies. Specifically, in relation to that doctrine, we are guided by the following:
Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) *4 that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding paternity of the child."
Warfield v. Warfield, 815 A.2d 1073, ¶ 8 (Pa.Super.2003) (quoting Fish v. Behers, 559 Pa. 523, 741 A.2d 721, 723 (1999)). Moreover,
Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.
Hamilton v. Hamilton, 795 A.2d 403, 405 (Pa.Super.2002) (quoting Fish, 741 A.2d at 724). Beyond this we are also aware that "evidence of fraud is relevant to the application of paternity by estoppel." Hamilton, 795 A.2d at 407. Under certain circumstances, fraud/misrepresentation can preclude the application of paternity by estoppel. Sekol v. Delsantro, 763 A.2d 405, 411 (Pa.Super.2000).
¶ 8 Because of the interrelationship of Father's three issues, we address them together. To a great extent Father relies on Mother's admission, sometime between 1995 and 1997, that he was not D.S.'s biological father. He then asserts that the distinction between "biological father" and "legal father" is merely a legal fiction, and that under the facts of this case they are the same. He also focuses on the fact that Mother misled him for "the first six to seven years of th[e] child's life," Brief of Father at 13, and that she should not benefit from her deceit. Father believes that Mother will rely on the Weidman decision because it supports Mother's position, but Father distinguishes that case from the facts here on the basis that in Weidman the father knew he was not the biological father from the time of conception.[2] Father also points to the discussion in Weidman that recognizes the split of authority among jurisdictions, where some state courts apply the paternity by estoppel doctrine and others do not. Father contends that we should adopt the position that the application of estoppel is inequitable and discourages fathers from getting involved when they are not the biological father for fear that they could permanently be required to support the child.
¶ 9 Father's most persuasive argument is based on Mother's misrepresentation as to Father's paternity for approximately six years. However, we recognize, as did the trial court, that "the critical fact here is that, even after learning he was not [D.S.]'s biological father, Father continued to act as [D.S.]'s father...." T.C.O. at 3. Cf. Kohler v. Bleem, 439 Pa.Super. 385, 654 A.2d 569, 576 (1995),[3] and Doran v. Doran, *5 820 A.2d 1279 (Pa.Super.2003).[4] In contrast to the actions taken by the presumptive fathers in Kohler and Doran, both of whom did not continue in their roles as fathers after the misrepresentation was revealed, here, following Mother's admission, Father has continued to support D.S. in every way.
¶ 10 Moreover, as for Father's attempts to distinguish the cases relied upon by the trial court,[5] the trial court, with reliance on Brinkley, explained that "Father's analysis of these cases unfortunately fails to recognize that the legal precedent for which they stand is not driven by the specific facts he distinguishes, but rather, by a compelling public policy: that of insuring security for children as to parentage." T.C.O. at 3. We agree. See also Hamilton, supra.
¶ 11 Father's final argument is a plea for this Court to follow what he calls the emerging trend in other jurisdictions with regard to the application of the doctrine of paternity by estoppel. This is an argument based on what he would like the law to be, not what it presently is. Father is essentially asserting that this doctrine encourages duplicity on the part of mothers and discourages someone in Father's shoes from assuming responsibility without fear of permanent obligations. See Weidman. Again, we recognize the trial court's discussion wherein it questions the validity of Father's contention that the application of estoppel encourages fraud and its appreciation that "Father cannot enjoy the immeasurable benefits and privileges he clearly has obtained by acting as [D.S.]'s father without simultaneously incurring the responsibilities of same." T.C.O. at 4.
¶ 12 Accordingly, we conclude that under the factual circumstances presented by the case and the case law cited above, the trial court did not abuse its discretion in concluding that paternity by estoppel applies in this case and in denying Father's petition to modify support.
¶ 13 Order affirmed.
NOTES
[1] Mother was formerly known as Ja.S.
[2] In Weidman, the presumptive father had a vasectomy after he and mother, who were married, had two children. Although aware that he was not the biological father of a third child, he continued for two and a half years to care for and provide support for the child. Following the parties' divorce and in the context of a support matter, the presumptive father sought to be relieved of his support obligation. This Court held that, having acted as a parent and having bonded with the child, the presumptive father was estopped from denying paternity. Id. at 579-80.
[3] In Kohler, the presumptive father "was operating under the misrepresentation that an `unknown' man had fathered the child." Id. at 576. He accepted that fact, but when learning that the next door neighbor was actually the biological father, he left the family home and sought a divorce, making no claims for custody or visitation. The mother sought child support from the biological father, who joined the presumptive father in the support action. The biological father attempted to use the doctrine of paternity by estoppel to prevent both the mother and the presumptive father from denying paternity. This Court held that the biological father was precluded from utilizing estoppel to prevent the presumptive father from denying paternity based on equity principals. Id.
[4] In Doran, this Court affirmed the trial court's conclusion that estoppel did not apply, based on the finding that following the DNA test that excluded the appellant as the father of the 11 year old child, the appellant no longer held the child out as his own.
[5] The case law cited by the trial court includes: Fish v. Behers, 559 Pa. 523, 741 A.2d 721 (1999), Jones v. Trojak, 535 Pa. 95, 634 A.2d 201 (1993), and Miscovich v. Miscovich, 455 Pa.Super. 437, 688 A.2d 726 (1997).