**Vargo v. Schwartz**

C.P. of Allegheny County, no. FD 04-2791-003.

*Alida J. Kornreich,* for plaintiff.
*Max A. Levine,* for defendant.

WECHT, *J.,* February 9, 2007—Defendant Richard K. Schwartz appeals from this court's November 29, 2006 order dismissing his exceptions to a hearing officer's child support recommendations.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Victoria L. Vargo (Mother) filed an action against Schwartz in February 2004 for the support of two children: Kelcie (born January 14, 2002) and Sydney (born May 28, 2003).[1] The parties agreed to paternity testing. An interim support order was entered. Schwartz

---

1. Mother has additional children who are not subject to this support order.

requested a hearing on estoppel, which occurred on September 24, 2004, before Hearing Officer Gary Gilman. Hearing Officer Gilman determined that the estoppel doctrine did not apply and that Mother was free to pursue her support claim.

Schwartz filed exceptions. Following argument and review, this court dismissed Schwartz's exceptions on February 14, 2005. Schwartz appealed the dismissal, but the Superior Court quashed the appeal as interlocutory because no final support order had yet been entered. *Vargo v. Schwartz,* 396 WDA 2005 (Pa. Super. April 4, 2005).

Weeks later, in March 2005, Schwartz filed a motion for recusal. A hearing was held on March 23, 2005 (on this and other motions), which resulted in an April 8, 2005 order denying the recusal motion.

The final support hearing was originally scheduled for July 13, 2005, but was continued three times, once on Mother's motion, once on Schwartz's motion, and once generally. During that time, this court granted Schwartz leave to reopen the record for the purpose of introducing testimony from a September 14, 2004 custody hearing in *Vargo v. Johnston,* an action that involves another child of Mother, and that is docketed herein at FD 92-3688. A hearing was scheduled for that purpose on February 10, 2006, before Hearing Officer Gilman. Mr. Gilman found that the presumption of paternity did not apply to *Vargo v. Schwartz,* as there was no intact family. Accordingly, Hearing Officer Gilman's recommendations provided that Mother could continue to pursue her support action against Schwartz.

In February 2006, Schwartz again filed exceptions. This court denied them on May 24, 2006. A support hearing was held on October 17, 2006, and an order was entered.[2] Schwartz filed exceptions on October 24, 2006. Schwartz brought a motion to dismiss his own pending exceptions, presumably to speed this appeal. This court signed Schwartz's proposed order dismissing his exceptions on November 29, 2006.

Schwartz filed his notice of appeal on December 22, 2006. On January 3, 2007, this court issued an order pursuant to Pa.R.A.P. 1925(b) directing Schwartz to file a concise statement of matters complained of on appeal. On January 17, 2007, Schwartz filed his statement with this court.

## DEFENDANT'S MATTERS COMPLAINED OF ON APPEAL

In his Rule 1925(b) statement, Schwartz asserts the following claims on appeal:

(1) The trial court erred as a matter of law in failing to apply the doctrine of paternity by estoppel to Mother's claim for child support against a third-party defendant when established by the evidence that, at the time of conception and thereafter, plaintiff resided together with her husband in an intact family.

(2) The trial court erred in failing to find that the plaintiff, as a matter of law, was estopped from prosecuting a complaint for child support against defendant, as she had

---

2. The order was revised on October 18, 2006 to reflect the fact that it was not consented to by both parties.

in other matters filed verified court pleadings in the Court of Common Pleas, Allegheny County, Pennsylvania, wherein she asserted that her husband was the father of the children at issue, and that she and her husband resided in the same household.

(3) The trial court erred in assigning evidentiary significance to the plaintiff's act of voluntarily dismissing a claim against her husband for child support. This occurrence, in a separate proceeding, has no probative value with respect to the application of the doctrine of estoppel between the parties in this action.

(4) The trial court erred and abused its discretion in concluding that the facts of record did not establish by clear and convincing evidence that the plaintiff's marriage is intact, resulting in the necessity of application of the doctrine of paternity by estoppel, barring plaintiff's child support complaint against a third party.

(5) The trial court committed error by affirming the hearing officer's independent review of and reliance upon a court child support payment record in *Vargo v. Vargo,* a record not introduced into evidence in this case. In doing so, the trial court violated the due process rights of the defendant. As review and introduction of this evidence was ex parte, defendant was denied the right to confrontation, cross-examination, and rebuttal regarding evidence interpreted by the court to be against his interests.

(6) The trial court committed error in concluding that plaintiff is not estopped from bringing a child support action against defendant, particularly as she failed to disclose to this court that she was pregnant by her husband at the date of the evidentiary hearing in this matter.

(7) The trial court erred in assigning any weight or credibility to the testimony given by plaintiff in this case, as a transcript of plaintiff's prior testimony, and the record of proceedings of September 14, 2005, in the case of *Johnston v. Vargo* (having been introduced into evidence in this matter with permission of this court), reveal that plaintiff made misrepresentations of fact to the court while under oath.

(8) The trial court erred in denying defendant's motion for recusal.

## STANDARD OF REVIEW

The Superior Court reviews paternity decisions in a support action under an abuse of discretion standard. *Rodgers v. Woodin,* 448 Pa. Super. 598, 602, 672 A.2d 814, 816 (1996). The trial court's ruling will be upheld absent a misapplication of law or a "manifestly unreasonable exercise of judgment." *Id.*

The standard in reviewing a recusal decision is "exceptionally deferential." *Commonwealth v. Bonds,* 890 A.2d 414, 418 (Pa. Super. 2005). The Superior Court has recognized that a trial "judge . . . is best qualified to gauge his ability to preside impartially," and accordingly has applied an abuse of discretion standard in reviewing recusal appeals. *Id.*

## DISCUSSION AND ANALYSIS

Although Schwartz lists eight matters on appeal, he essentially raises four main issues: this court's dispositions of the presumption of paternity and the paternity by estoppel doctrine; this court's use of *Vargo v. Vargo;*

this court's assessment of Mother's credibility; and this court's denial of the recusal motion.[3] These issues are addressed hereinbelow.

### The Presumption of Paternity and the Paternity by Estoppel Doctrine

Schwartz claims this court erred in finding that Mother's family was not intact at the time of conception, and that the presumption of paternity did not apply. He also asserts that Mother should have been estopped from claiming Schwartz as the father, because she had asserted that her husband, Kevin Vargo, was the father, and because she was pregnant by Vargo at the time of the evidentiary hearing. Additionally, Schwartz claims this court erred in considering Mother's dismissal of the claim she had filed against Vargo for Kelcie and Sydney. Schwartz asserts this dismissal has no probative value in the application of the paternity by estoppel doctrine.

The relevant analysis for paternity decisions can be found in *Brinkley v. King,* 549 Pa. 241, 248-49, 701 A.2d 176, 180 (1997). The presumption of paternity provides that a child conceived or born during a marriage is presumed to be a child of that marriage. *Id.* at 248, 701 A.2d at 179. The presumption of paternity can be overcome by clear and convincing evidence that the husband ei-

---

3. Schwartz referenced only the November 29, 2006 order on exceptions in his notice of appeal. He did not mention the April 8, 2005 order on recusal until he filed his 1925(b) concise statement. To the best of this court's knowledge, no order consolidating these two separate orders for appeal purposes has been entered or even sought. Nevertheless, this court addresses both orders in this opinion in view of Schwartz's 1925(b) filing.

ther did not have access to the wife or was physically incapable of procreation. *Id.* The trial court must undertake a two-step inquiry: first, whether the presumption of paternity applies, and second, whether, if the presumption is inapplicable or is rebutted, an estoppel arises. *Id.* at 250, 701 A.2d at 180.

The presumption does not always apply. As our Supreme Court (*per* Chief Justice Flaherty) stated 10 years ago in *Brinkley:*

"It remains to consider how one knows whether the presumption applies in any given case. Traditionally, the answer to this question has been that the presumption applies if the child was conceived or born during the marriage. We now question the wisdom of this application of the presumption because the nature of male-female relationships appears to have changed dramatically since the presumption was created. There was a time when divorce was relatively uncommon and marriages tended to remain intact. Applying the presumption whenever the child was conceived or born during the marriage, therefore, tended to promote the policy behind the presumption: the preservation of marriages. Today, however, separation, divorce, and children born during marriage to third-party fathers is relatively common, and it is considerably less apparent that application of the presumption to all cases in which the child was conceived or born during the marriage is fair. Accordingly, consistent with the ever-present guiding principle of our law, cessante ratione legis cessat et ipsa lex, we hold that the presumption of paternity applies in any case where the policies which underlie the presumption, stated above, would be advanced by its application, and in other cases,

it does not apply." 549 Pa. at 250-51, 701 A.2d at 180-81. (footnote omitted)

In *Fish v. Behers,* where the mother and father already were divorced by the time the support action reached a hearing, the court found the presumption inapplicable because its application would not advance the policy underlying that presumption, to wit, "the preservation of marriages." *Fish v. Behers,* 559 Pa. 523, 528, 741 A.2d 721, 722 (1999). Elsewhere, our Supreme Court has stated: "If the relationship between husband and wife is such that they have repudiated their marriage vows, although they may be living together after the child was born, . . . there is no intact family to protect . . . ." *Freedman v. McCandless,* 539 Pa. 584, 592-93, 654 A.2d 529, 533 (1995).

Here, Mother and Vargo were separated. There was no marriage to preserve, no policy to vindicate. At the September 24, 2004 hearing, Mother testified that she and Vargo separated in October 2003 and that she had filed for divorce. T. 9/24/04 at 4, 9-11.[4] Mother stated that she and Vargo had "on occasion" engaged in sexual relations since their separation. T. 9/24/04 at 11. Mother also testified that Vargo had been living with her "on and off, he's been in and out." T. 9/24/04 at 12. Vargo testified that he stayed with Mother on and off when he had nowhere else to stay. T. 9/24/04 at 81. Mother admitted, "I am not sure what I'm going to do with Mr. Vargo. It's not looking too good right now. . . ." T. 9/24/

---

4. T. indicates transcript, followed by the date of the hearing. R. denotes hearing officer recommendations, followed by the date of the recommendations.

04 at 86. Hugh Johnston, the father of another of Mother's children, testified that Vargo beat Mother, that Mother had left the home on occasion, and that the older children had left the house to stay with their maternal grandmother. T. 9/14/04 at 26-28, 13-16.[5]

The record evidence developed at the September 14 and 24, 2004 hearings did not paint a picture of an intact family or a marriage that could be preserved. To the contrary, the record established a broken marriage and family that were not magically restored by Vargo's periodic visits or episodic sex between the parties. In the instant case, Hearing Officer Gilman correctly determined that the presumption of paternity does not apply.

Decisional authority next requires the court to determine whether an estoppel has arisen. The paternity by estoppel doctrine provides that, "because of a person's conduct (*e.g.,* holding out the child as his own, or supporting the child), that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father." *Freedman,* 539 Pa. at 591, 654 A.2d at 532-33. (footnote omitted) Evidence of fraud is relevant, and can preclude application of the estoppel doctrine. *J.C. v. J.S.,* 826 A.2d 1, 4 (Pa. Super. 2003). The court must inquire whether the man against whom estoppel is asserted continued to act as a father once the biological father was revealed. *Id.* at 4-5. Additionally, the biological father should not

---

5. Citations for 9/14/04 relate to the transcript of the record proceedings in *Vargo v. Johnston.*

be able to benefit from his participation in a fraud regarding paternity. *Kohler v. Bleem,* 439 Pa. Super. 385, 397, 654 A.2d 569, 575-76 (1995).

The case of *Gebler v. Gatti,* 895 A.2d 1 (Pa. Super. 2006), is informative. In *Gebler,* the mother concealed from Gatti the fact that the child might not be his. *Id.* at 2. Once Gatti learned the child was not his, he no longer held himself out as the child's father. *Id.* at 4-5. While the child in *Gebler* was only 18 months old at the time the true paternity was revealed, the Superior Court noted that, even when a relationship between father and child has been established, evidence of fraud can preclude the application of the estoppel doctrine. *Id.* at 5. Relying on the fact that Gatti stopped acting as a father and the "strong public policy against permitting a party who has acted in reliance upon a misrepresentation to suffer harm as a result," the Superior Court declined to invoke estoppel against Gatti. *Id.*

There is evidence of fraud in this case. Mother admitted that she knew the children were not Vargo's. T. 9/24/04 at 32. Yet it was not until October 2003 that Mother chose to inform Vargo that he was not the children's father. T. 9/24/04 at 11. While it is true that Vargo was on the birth certificates, had put the children on his medical insurance, had provided financial support, and had taken the children to the doctor, he did most of those things prior to finding out he was not the father. T. 9/24/04 at 18-24. As a matter of law, the focus is on the husband's actions after the revelation of paternity. *J.C.,* 826 A.2d at 4-5. Vargo continued to keep the children on his health insurance so they would not be at risk if they "were sick," and he occasionally played with them. T. 9/24/04 at 27,

81. But Vargo "told everyone" beginning in October 2003 that the children were not his. T. 9/24/04 at 29. And while Vargo was ordered to pay support for an older child (Timothy) who was his biologically, he was not ordered to pay support for either of the children in question in this case. T. 9/24/04 at 52.

Mother also testified that Schwartz participated in the fraud. Schwartz knew "for a long time that they were his kids," and he told Mother not to tell Vargo. T. 9/24/04 at 90. As a matter of law, Schwartz may not benefit from his participation in the fraud perpetrated against Vargo by attempting to foist an estoppel upon Vargo.

Schwartz also claims that the court should not have considered Mother's dismissal of her claims against Vargo for support of the children. T. 9/24/04 at 52.[6] Schwartz asserts that this dismissal is not probative in the face of the estoppel doctrine. However, part of the court's inquiry scrutinizes the husband's actions subsequent to learning the true paternity. Whether the husband provided financial support or was ordered to pay support are relevant inquiries which help to determine whether the husband held out the children as his own. In view of the fraud involved, and Vargo's actions after learning the children were not his, the estoppel doctrine does not apply.

As neither the presumption of paternity nor the estoppel doctrine applies, there is no legal disability preclud-

---

6. Mother stated that, as a result of a January 13, 2004 hearing, Vargo was not ordered to pay support for Kelcie and Sydney.

ing Mother from pursuing her support claim against Schwartz.[7]

*The Use of* Vargo v. Vargo *in This Case*

Schwartz alleges this court erred in allowing the hearing officer to use the transcript and child support record of *Vargo v. Vargo*. Schwartz asserts that this consideration violated his due process rights. However, it was Schwartz's attorney that introduced the transcript of

---

7. As set forth hereinabove, the disposition of this case derives squarely from application of controlling appellate precedent. The undersigned nonetheless takes note of the compelling opinion of the Honorable Richard Renn in *Hamersley v. Brown,* no. 05-FC-1682-Y03 (York Cty. June 26, 2006) (notice of appeal filed at 1162 MDA 2006; submitted to Superior Court panel January 22, 2007). In *Hamersley,* Judge Renn has encouraged the Superior Court to review the applicability of the presumption of paternity and estoppel doctrine in view of the current state of the family. The undersigned joins in Judge Renn's reasoning. In an age when family relations have changed and DNA testing can provide prompt and accurate paternity determinations, these doctrines may have outlived their usefulness. In an age when there is easy access to court records via the Internet, children whose paternity has been questioned enjoy little security in "knowing" their father based on nothing more than what our Supreme Court has called the "two great fictions of the law of paternity." *Brinkley,* 549 Pa. at 249, 701 A.2d at 180. In any case where paternity is questioned, there necessarily is a question as to whether the family is still intact. And, given the fluid nature of today's family, it is hard to define what an intact family is. With changing social realities and the ready availability of accurate genetic testing, the twin "fictions" of presumption of paternity and paternity by estoppel increasingly seem quaint vestiges of a bygone era. In their current form, these devices are no longer sound law or policy. As Chief Justice Flaherty reminded us in *Brinkley,* cessante ratione legis cessat et ipsa lex (where stops the reason, there stops the rule). 549 Pa. at 250, 701 A. 2d at 181. The reason has stopped. The rule should as well. It is time that our appellate courts revisit the issue.

*Vargo v. Vargo* as an exhibit in the September 24, 2004 hearing. T. 9/24/04 at 43. Schwartz also referenced the support order against Vargo in the portions of the *Vargo v. Johnston* transcript read into evidence at the February 10, 2006 hearing. T. 2/10/06 at 14-15. By introducing this evidence, Schwartz made the *Vargo* support order an issue in this case. Once Schwartz raised the issue, it was not inappropriate for the hearing officer to observe that Vargo had been paying child support for one child.

Additionally, as noted above, part of the inquiry is into the husband's actions subsequent to learning the true paternity. Once again, whether the husband provided financial support or was ordered to pay support are relevant to the question of whether he held the children out as his own. Hearing Officer Gilman properly considered this evidence.

### *The Court's Assessment of Mother's Credibility*

The fact-finder is the judge of a witness' credibility. *In re Funds in the Possession of Conemaugh Township Supervisors,* 562 Pa. 85, 89, 753 A.2d 788, 790 (2000). Indeed, it is the duty of the fact-finder to determine the credibility of the witness. *Anchel v. Shea,* 762 A.2d 346, 358 (Pa. Super. 2000).

It was Hearing Officer Gilman who saw Mother and heard her testimony in person and on the record. The hearing officer was aware of any inconsistencies in Mother's testimony, as well as all other testimony, and the record before him as a whole. Hearing Officer Gilman concluded that the objective evidence supported the contention that this was not an intact family. R. 2/10/06 at 2.

This court found the hearing officer's conclusions to be reasonable in view of the evidence of record. The testimony from the various transcripts, overall, does not paint a picture of a functional, intact family.

*The Court's Denial of the Recusal Motion*[8]

When a motion for recusal is made, the judge must make an independent analysis of his or her ability to remain impartial. *Commonwealth v. Whitmore,* 912 A.2d 827, 834 (Pa. 2006). In performing this analysis, the judge must decide whether further involvement in the case would "create an appearance of impropriety and/or would

---

8. The Superior Court has placed this appeal on the Family Fast Track, and the record is due on Monday, February 12, 2007. Nonetheless, Schwartz failed to order the required transcript from the March 23, 2005 record proceeding on his recusal motion until directed to do so by the Superior Court. Hence, in preparing this opinion, this court was compelled by the February 12, 2007 due date and the lack of transcript to proceed by recollection concerning the March 23, 2005 testimony and argument. On the afternoon of Thursday, February 8, 2007, as this court finalized this opinion for submission to the Superior Court, this court received a copy of Schwartz's letter to the Superior Court advising that the March 23, 2005 hearing transcript finally had been filed. No transcript was provided to this court. This court, through staff, telephonically requested a copy of the transcript from staff of Schwartz's counsel, who provided it late in the afternoon on Thursday, February 8, 2007. This court now has carefully reviewed the March 23, 2005 transcript in its entirety. Because that transcript dovetails with and supports the points made by this court hereinabove, and because the record is due in the Superior Court on Monday, February 12, 2007, this court has not undertaken to revise and supplement this opinion to add citations to the March 23, 2005 record nor to quote from, or comment on, that record. This court stands on the transcript of the hearing, and believes that a reading of the March 23, 2005 transcript will usefully substantiate and amplify for the Superior Court the points made by this court in the text of this opinion.

tend to undermine public confidence in the judiciary." *Id.* Once the judge makes the decision, it is final. *Id.* If the decision is later challenged, the burden of proof is on the party requesting disqualification to show the judge was biased, prejudiced or unfair. *Id.* Additionally, if the record before the Superior Court reveals that the party received a fair and impartial trial, the alleged disqualifying factors become moot. *Reilly by Reilly v. SEPTA,* 507 Pa. 204, 223, 489 A.2d 1291, 1300 (1985).

Schwartz presented two grounds for recusal in his motion: this court's knowledge of paternity test results that had been excluded by Hearing Officer Gilman and this court's knowledge of Schwartz.

On the first issue, Schwartz contends that this court was prejudiced in its review of the paternity test results that were attached to and mentioned in one of Mother's briefs. The test results had been excluded by Hearing Officer Gilman prior to the involvement of Mother's attorney in the case. While this court (like Mr. Gilman) was aware of the paternity test results, this awareness neither biased this court's decision-making process nor created an appearance of impropriety. As a matter of current, controlling law, the results were not relevant. As the foregoing analysis and discussion makes clear, they did not impact the disposition of this case.

With respect to Schwartz's second issue, in March 2005, Schwartz accompanied his lawyer to court for the presentation of a motion for reconsideration, whereupon this court noticed him in the gallery. This court first learned and noticed at that time that the Schwartz in this case is the Schwartz known to this court as a former

member of Allegheny County Council. This court did not have a personal relationship with Schwartz, and only knew him from the past through occasional, cordial encounters with him, his wife, and his daughter in governmental and political settings between approximately 1999 and 2003. As stated, this court did not realize it was acquainted with the Schwartz in this case until he was present in the courtroom; his name alone on the file was not familiar enough to raise the acquaintance in this court's mind. If every judge was required to recuse him/herself each time a professional or political acquaintance was in court, it would be the very rare case that could be heard. This court was and is convinced that it was neither biased nor gave the appearance of bias.

This court performed the required analysis of its ability to remain impartial. It found that there was no bias or prejudice, nor the appearance of same, whether for or against either party. As both parties received a fair and impartial hearing and adjudication, the recusal claim is without merit.

## CONCLUSION

For the foregoing reasons, this court's November 29, 2006 order should be affirmed.