Corliss v. Corliss

*Kimberly Fedrigon,* for plaintiff.
*Justin Corliss,* pro se.

ZULICK, *J.,* December 23, 2010—

## FINDINGS OF FACT

1.  Catherine Corliss married Frank Guskiewicz on September 10, 1983.

2.  They had two sons, Christopher Guskiewicz, born October 9, 1989, and Justin Guskiewicz, born August 24, 1990.

3.  Catherine and Frank Guskiewicz separated in 1994 and were divorced on March 23, 1999.

4.  Catherine and the two boys moved from the Guskiewicz residence.

5.  Catherine and Frank Guskiewicz were not on good terms following the separation.

6.  Catherine and Frank Guskiewicz did not have intimate relations after they separated in 1994.

7. Catherine asked Frank Guskiewicz for a divorce because she could not afford one but he did not proceed to obtain a divorce.

8. Frank Guskiewicz has resided by himself at his residence on Learn Road, Scotrun, Pennsylvania since 1996.

9. Catherine met Justin Corliss in November of 1997. They began to live together in May of 1998.

10. Chaylene was conceived while Justin Corliss and Catherine were living together.

11. Justin Corliss was incarcerated in July of 1998 and remained in prison until his release in July of 2008.

12. Chaylene Jasmine Corliss was born on February 16, 1999.

13. From the time that Chaylene was two to three months old, Catherine brought Chaylene to visit Justin Corliss while he was incarcerated in Monroe County and later while he was incarcerated in state prison in Frackville, Pennsylvania.

14. After he was moved from Frackville, she did not bring Chaylene to visit Mr. Corliss because she did not like her daughter visiting a prison.

15. Justin Corliss continued to write to Chaylene and to call Catherine two times per week from jail to speak with Chaylene.

16. When Justin Corliss was released from prison in July 2008, Catherine and Chaylene met him in

Bartonsville, Pennsylvania and he moved in with Catherine, her two sons and Chaylene.

17. Justin Corliss has always referred to Chaylene as his daughter until this petition was filed.

18. Justin Corliss commenced an action for custody of Chaylene on August 2, 2010 and referred to her as his child in the custody petition.

19. Justin Corliss has claimed Chaylene as his dependent on his tax returns for the past two years.

20. When Catherine commenced a divorce action against Frank Guskiewicz in October of 1998, he did not want to consent to the divorce.

21. Catherine told him that she was pregnant with Justin Corliss' child and at that point Guskiewicz consented to the divorce. The divorce was granted on March 23, 1999.

22. Frank Guskiewicz has provided financial support to Catherine from the time of the parties' separation to present for the support of his two sons.

23. Frank Guskiewicz has visited with his sons and Chaylene on a regular basis and has given Chaylene gifts along with gifts to his sons at Christmas time through the years.

## DISCUSSION

Catherine Corliss seeks to establish Justin Corliss' paternity of her daughter, Chaylene, in order to pursue child support from him. Mr. Corliss has petitioned the court to vacate an order directing the parties to participate

in genetic testing,[1] raising defenses of presumption of paternity and paternity by estoppel. He argues that Frank Guskiewicz is estopped from denying paternity because Chaylene was born during the Frank Guskiewicz-Catherine Corliss marriage and Mr. Guskiewicz supported Chaylene after the divorce.

Pennsylvania law requires a two-part test to be satisfied before a trial court may admit DNA test results as evidence of paternity. The first part is to determine whether the presumption of paternity applies. The second part is to decide whether paternity by estoppel can be invoked. See *J.C. v. J.S.*, 826 A.2d 1, 3 (Pa. Super. 2003); *Amrhein v. Cozad*, 714 A.2d 409, 411 (Pa. Super. 1998). Both the presumption of paternity and paternity by estoppel must be determined inapplicable before the court may consider DNA testing of Mr. Corliss.

*Presumptive Paternity*

The law of presumptive paternity establishes the general principle that a child conceived or born during a marriage is presumed to be a child of the marriage. *Amrhein* at 412 (citing *John M. v. Paula T.*, 524 Pa. 306, 321, 571 A.2d 1380, 1388 (Pa. 1990)). "This presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence either that the presumptive father had no access to the mother or the presumptive father was physically

---

1. Based on a review of the record, it appears that the court did not issue an order directing the parties to participate in genetic testing. Instead, the parties agreed to genetic testing by stipulation, dated August 31, 2010.

incapable of procreation at the time of conception." *Id.*

Here, the presumption of paternity does not apply to Mr. Guskiewicz Mr. Guskiewicz was married to Ms. Corliss from September 10, 1983 until their divorce on March 23, 1999. They separated permanently in 1994 and have not had sexual relations since that time. Chaylene Corliss was born February 16, 1999 and was conceived while Ms. Corliss was living with Mr. Corliss. Although Mr. Guskiewicz and Ms. Corliss were married at the time of Chaylene's conception and birth, they were separated and their testimony established by clear and convincing evidence that they had not had sexual relations in years. Since the parties were separated and Ms. Corliss had filed for divorce by the time of Chaylene's birth, "[t]he rebuttable presumption of paternity is not applicable since mother and [then-husband] no longer had an intact marriage to be preserved." *Wieland v. Wieland,* 948 A.2d 863, 868 (Pa. Super. 2008) (citing *J.C.,* 826 A.2d at 5-6 (Pa. Super. 2003)); *Brinkley v. King,* 549 Pa. 241, 250-51, 701 A.2d 176, 181 n. 8 (Pa. 1997) ("Our view, as expressed today, would be that when the parties separated, the presumption of paternity was inapplicable...."); see also *Martin v. Martin,* 710 A.2d 61, 65 (Pa. Super. 1998) (citation omitted) (holding the policies of preserving intact marriages and families not implicated where parties had permanently separated, but not divorced, before birth of child). In addition, Mr. Corliss conceded at the hearing that the marriage between Mr. Guskiewicz and Ms. Corliss was not intact at the time of Chaylene's birth. Accordingly, I find that the law of presumptive paternity does not apply

to Mr. Guskiewicz.

*Paternity by Estoppel*

Mr. Corliss also asserts the paternity of Mr. Guskiewicz by estoppel. He contends that Mr. Guskiewicz has financially supported Ms. Corliss, and therefore indirectly supported Chaylene as well. He argues that the regular visits Mr. Guskiewicz paid to Ms. Corliss, his sons, and Chaylene during the Corliss' marriage evidence paternal behavior by Mr. Guskiewicz toward Chaylene. He also asserts that Mr. Guskiewicz has claimed Chaylene on past tax returns, but he has not offered any supporting documentation into evidence.

Paternity by estoppel is the legal doctrine that "because of a person's conduct...that person, regardless of his true biological status, will not be permitted to deny parentage . . . ." It is a "principle which applies to prevent a party from assuming a position or asserting a right to another's disadvantage inconsistent with a position previously taken." *Com. ex rel. Gonzalez v. Andreas*, 369 A.2d 416, 418 (Pa. Super. 1976) (citation omitted). Under principles of equity, parental relationships can be established constructively and these relationships and their corresponding duties "merit judicial recognition and enforcement." *Manze v. Manze*, 523 A.2d 821, 825 (Pa. Super. 1987). The General Assembly has codified the principle of paternity by estoppel in 23 Pa. C.S.A. § 5102(b), which provides, in pertinent part:

Children; Legitimacy, determination of paternity

(b) For purposes of prescribed benefits to children born out of wedlock by, from and through the father, paternity shall be determined by any one of the following ways:

(2) If during the lifetime of the child, the father openly holds out the child to be his and receives the child into his home, or openly holds the child to be his and provides support for the child which shall be determined by clear and convincing evidence.

Here, Mr. Corliss has presented insufficient evidence that Mr. Guskiewicz considered Chaylene to be his daughter, provided for her as a father would, and held himself out to be her father. First, Mr. Guskiewicz noted that Chaylene was conceived years after he and Ms. Corliss last had sex, and that on that basis he does not consider her his child and has never held himself out as her father. Secondly, Mr. Guskiewicz's financial support was given to Ms. Corliss to assist her and their sons. Any benefits Chaylene incurred as a result of his financial support to Ms. Corliss were incidental. Thirdly, Mr. Guskiewicz's regular visits and gifts to the Corliss residence were based primarily on Mr. Guskiewicz's desire to relate to his sons and maintain his friendship with Ms. Corliss. In sum, Mr. Guskiewicz's interactions with Chaylene were not like those of a father with a daughter; he has never supported her directly nor held himself out to be her father. Mr. Corliss has therefore not established by clear and convincing evidence a basis for Mr. Guskiewicz to be stopped from denying paternity of Chaylene. Mr. Corliss' petition to vacate the order for genetic testing will be denied.

Mr. Corliss' motion to hold Catherine Corliss and Frank Guskiewicz in contempt, filed after the hearing, will also be denied. He contends in the motion that Catherine Corliss and Frank Guskiewicz committed perjury during the hearing. If he has evidence of perjury, he may pursue that avenue with the police. However, the unsubstantiated allegation that Ms. Corliss and Mr. Guskiewicz may have conspired to commit perjury does not warrant further action by this court.

## ORDER

And now, December 23, 2010, upon consideration of the petition to vacate an order for genetic testing, filed by Justin Corliss, and following a hearing on the motion, it is ordered that:

1. The petition is denied.

2. The parties are directed to appear for genetic testing in accordance with their stipulation of August 31, 2010.

3. Defendant Justin Corliss' motion for a finding of contempt is also denied.