J-A06010-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| LANE M. BIGELOW | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| R.D.Q. AND DAKOTA DILL | : | No. 1036 WDA 2023 |
| | : | |

Appeal from the Order Entered August 15, 2023
In the Court of Common Pleas of Clearfield County Civil Division at
No(s):  2023-0360-CD

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and BECK, J.

MEMORANDUM BY LAZARUS, P.J.:                    **FILED: June 14, 2024**

Lane M. Bigelow appeals from the order, entered in the Court of Common Pleas of Clearfield County, dismissing, with prejudice, his petition for genetic testing, relative to Appellee R.D.Q.'s (Mother) minor child, P.M.Q. (Child) (born 1/2015), after the court found the claim barred by *stare decisis* and/or res judicata  or, in the alternative, by the doctrine of paternity by estoppel.  After careful review, we affirm.

On November 5, 2019, Bigelow filed a complaint for custody of Child, claiming that Mother "has allowed [him] to participate in [C]hild's life, at her own convenience[, and that s]ince the end of February 2019, [Mother] has pulled [Child] away from [him] and allow[ed him] zero involvement."  Bigelow Custody Complaint, 11/5/19, at 4.  Mother filed preliminary objections to Bigelow's complaint, alleging that she and Bigelow "were in a relationship with one another prior to 2014[, however, a]t the time [C]hild was conceived,

[they] were not in a relationship with one another[.]" Mother's Preliminary Objections to Bigelow Custody Complaint, 1/29/20, at ¶¶ 5-6. Mother alleged that she was "in a relationship with [Appellee] Dakota J. Dill" at the time of Child's conception, that "Dill, *and not* [*Bigelow*], is [Child's] father and has acted as the father of [C]hild," that Dill . . . is listed as the father on Child's birth certificate, and that Dill and Mother have shared legal and physical custody of Child since Child's 2015 birth, "while the parties were in a relationship and continuing[,] [t]hereafter[,] once the relationship terminated." *Id.* at ¶ 7-10 (emphasis in original). Mother further averred that she and Child lived with Dill in Penfield for three years (2015-2018) until their relationship ended. *Id.* at ¶ 11. Finally, Mother asserted that even since her relationship with Dill ended, she and Dill "continue to share legal and physical custody of [C]hild, . . . divide equally all costs associated with [C]hild, [and] share in the parental responsibilities concerning [C]hild's medical needs. *See* N.T. Argument, 4/18/23, at 23-25 (Dill stating he continues to pay approximately $580.00/month in support for Child). On February 19, 2020, at Bigelow's request, Bigelow's custody complaint was withdrawn and the case closed.

In April 2022, Dill filed a complaint against Mother to establish paternity and for genetic testing, claiming that Child resides with Mother, that he believes he is not Child's biological father, that Mother was not married at the time Child was born, and that she is not currently married. *See* Dill Complaint for Paternity/Genetic Testing, 4/28/22, at 1. Mother filed an answer to Dill's

complaint, denying that he "is not the father of [C]hild" and that she believes "a custody order remains in place for shared legal and shared physical custody [of Child, although Dill] has not exercised those periods of custody." Mother's Answer to Dill Complaint, 5/19/22, at ¶ 3-4. Attached to Mother's answer are two orders,[1] the first, dated, March 18, 2021, that states "following a *de novo* hearing held on March 17, 2021, and presentation of the issues before this [c]ourt, the [c]ourt is satisfied that [Dill] is estopped from denying paternity," Order, 3/18/21. The second order, dated May 24, 2022, states "[Dill] was estopped from denying paternity by [o]rder of [c]ourt on March 18, 2021," and dismisses Dill's paternity complaint and request for genetic testing. Order, 5/24/22.

On March 8, 2023, Bigelow filed a complaint, against Mother and Dill, to establish Child's paternity and for genetic testing. In his complaint, Bigelow claimed that he "believes he may be the natural father of [C]hild, . . . [that Mother] was not married at the time [C]hild was conceived or born[, that he] believes . . . that no paternity has ever been formally established[,] and that the support action filed by [Mother] against Defendant Dill is solely based on the fact that Defendant Dill is listed as [C]hild's father on [C]hild's birth

---

[1] Both orders were entered on a separate docket by the Honorable Paul E. Cherry and have been included in the certified record on appeal.

- 3 -

certificate."[2]  Bigelow Complaint for Paternity/Genetic Testing, 3/8/23, at ¶¶ 4-9.  **See** 23 Pa.C.S.A. § 4343 (setting forth provision for determination, limitation of actions, and genetic testing in paternity matters).  On April 18, 2023, the Honorable Frederic J. Ammerman heard argument on Bigelow's complaint to establish paternity and Mother's answer, new matter, and motion for counsel fees.  After hearing from counsel, Dill, and Bigelow, the court ultimately ordered Bigelow's counsel to "provide the [c]ourt with a brief in regard to [the issue of *stare decisis* in] no more than [] 25 days [and Mother's counsel] shall have an additional 25 days in which to submit [her responsive] brief."  N.T. Argument, 4/18/23, at 30.

After the submission of briefs by the parties, the court, on August 15, 2023, issued an order dismissing Bigelow's petition for genetic testing. Bigelow filed a timely notice of appeal and court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.  Bigelow presents the following issues for our consideration:

(1)    Whether the trial court committed an error of law and abused its discretion in barring [Bigelow] from requesting genetic testing in accordance with the doctrine of paternity by estoppel and in opposition of putative father's consent to allow genetic testing?

(2)    Whether the trial court committed an error of law and abused its discretion in determining [Bigelow's] reliance on fraud was misplaced without an evidentiary hearing?

---

[2] Mother and Bigelow have one child together, L.D.B., born in October 2012. The parties have joint legal and shared physical custody of L.D.B.

- 4 -

> (3)    Whether the trial court committed an error of law and abused its discretion in barring [Bigelow] from genetic testing on the basis of *stare decisis* and/or res judicata?

Appellant's Brief, at 4.

Bigelow claims that the trial court erred when it denied his request for genetic testing, to establish paternity, "by determining that the orders which estop Dill from denying paternity also bar [him] from asserting any claim for paternity." ***Id.*** at 9.

In ***Vargo v. Schwartz***, 940 A.2d 459 (Pa. Super. 2007), our Court explained the doctrine of paternity by estoppel:

> Estoppel in paternity actions is a legal determination based on the conduct of the mother and/or the putative father with regard to the child, e.g., holding out the child to the community as a product of their marriage and/or supporting the child. If the evidence is sufficient, estoppel may bar either a putative father from denying paternity or a mother from succeeding in a claim of paternity against a third party. ***Fish*** [***v. Behers***], [741 A.2d 721,] 723 [(Pa. 1999)]; ***J.C. v. J.S.***, [] 826 A.2d 1, 3-4 (Pa. Super. 2003); ***Doran*** [***v. Doran***], [820 A.2d 1279,] 1283 [(Pa. Super. 2003)]. Estoppel rests on the principle that a person may not "challenge his role as a parent once he has accepted it, even with contrary DNA and blood tests." ***Warfield v. Warfield***, [] 815 A.2d 1073, 1077 (Pa. Super. 2003).
>
>> The public policy behind the doctrine of estoppel has often been expressed as follows:
>>
>> Estoppel is based on the public policy that children should be secure in knowing who their parents are. If a certain person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not[,] in fact[,] his father.
>
> ***Fish***, ***supra*** at 530, 741 A.2d at 724 (citation omitted); ***J.C.***, ***supra*** at 4 (same). As this statement of policy makes clear, the doctrine of paternity by estoppel is rooted in the best interests of the child. ***N.C.*** [***v. M.H.***, 923 A.2d 499,] 503 [(Pa. Super. 2007)].

> Evidence of fraud or misrepresentation with regard to issues of paternity is relevant to the application of estoppel and must be considered by the trial court. **N.C.**, **supra** at 503; **J.C.**, **supra** at 4; **Doran**, **supra** at 1283; **Sekol** [**v. Delsantro**, 763 A.2d 405,] 410 [(Pa. Super. 2000)]. In some situations, fraud can preclude the application of paternity by estoppel. **N.C.**, **supra** at 504; **J.C.**, **supra** at 4; **Sekol**, **supra** at 411. Particularly where fraud or misrepresentation is involved, courts applying the doctrine of paternity by estoppel have taken care to consider evidence of the husband's conduct toward the child not only before the husband learned that he was not the child's biological father, but also *after* becoming aware of his non-parentage. **N.C.**, **supra** at 502 n.4; **J.C.**, **supra** at 4-5; **Doran**, **supra** at 1284; **Sekol**, **supra** at 410.

**Vargo**, 940 A.2d at 464 (citation omitted) (emphasis in original). "[T]he doctrine of estoppel embodies the fiction that, regardless of biology, in the absence of a marriage, the person who has cared for the child is the parent." **Brinkley v. King**, 701 A.2d 176, 180 (Pa. 1997). In **K.E.M. v. P.C.S.**, 38 A.3d 798 (Pa. 2012), our Supreme Court reiterated that "paternity by estoppel continues to pertain in Pennsylvania, but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child." **Id.** at 810.

Instantly, Bigelow waited more than eight years to question Child's paternity. Although Bigelow is, in fact, seeking a determination of paternity in a seemingly noble effort to *assume* and *not avoid* the obligations of fatherhood, we recognize that the doctrine of paternity by estoppel primarily exists to give children stability and security in knowing who their parents are. **Vargo**, **supra**. **See Commonwealth ex rel. Gonzalez v. Andreas**, 369 A.2d 416, 418 (Pa. Super. 1976) ("[E]quitable estoppel, reduced to its essence, is a doctrine of fundamental fairness designed to preclude a party

from depriving another of a reasonable expectation when the party inducing the expectation albeit gratuitously knew or should have known that the other would rely upon that conduct to his or her detriment."). In fact, "the dispositive issue [with regard to paternity by estoppel] should be whether the putative father has indicated by his conduct that the child is his own." *Id.*

Here, the only father figure Child has known growing up is Dill, having lived with him and Mother for the first three years of her life. *See Ellison v. Lopez,* 959 A.2d 395, 397-98 (Pa. Super. 2008) ("Under the doctrine of paternity by estoppel, a putative father who is not a child's biological father is estopped from challenging paternity after he has held himself out as the child's father or provided support."); *see also* 23 Pa.C.S. § 5102(b)(2).

To now permit Bigelow to establish his paternity (via genetic testing) with regard to Child would ignore the fact that Dill: (1) is obligated to financially support Child; (2) has custodial rights to Child; and (3) is estopped from denying his paternity to Child.[3] *See* Order, 3/18/21; Order, 5/24/22 (dismissing Dill's paternity complaint/request for genetic testing, concluding "[Dill i]s estopped from denying paternity by [o]rder of [c]ourt on March 18, 2021[.]"). Moreover, to grant Bigelow the relief he requests cuts against the long-standing application of the doctrine of paternity by estoppel, which has been found to apply to cases even where it is was undisputed that the putative

---

[3] Contrary to Bigelow's averment in his complaint to establish paternity, there has been a determination as to the paternity of Child, albeit by estoppel, in prior support and custody proceedings involving Mother and Dill. *See* Clearfield County Docket No. 19-00010-SD.

father was not the biological father, the mother was never married to the putative father, and the mother was married to a third party at the time of the child's birth. **See Hamilton v. Hamilton**, 795 A.2d 403 (Pa. Super. 2002); **R.K.J. v. S.P.K.**, 77 A.3d 22 (Pa. Super. 2013).[4]

Bigelow also claims that the trial court abused its discretion by denying his fraud claim without an evidentiary hearing. Where Bigelow failed not only to present any evidence to support a claim of fraud, but also did not include a fraud allegation in his complaint to establish paternity, we conclude that he waived any such assertion and that the court properly denied him any relief on that basis. **See McConnel v. Berkheimer**, 781 A.3d 206 (Pa. Super. 2001) (error for trial court to order blood tests to establish paternity where there was no evidence to support fraud claim). **See also** Pa.R.C.P. 1019 ("averments of fraud . . . shall be [stated] with particularity").

Order affirmed.

_____

[4] Instantly, the trial court concluded that because "the facts revolve around [C]hild, her conception, and the father figure or lack thereof, in her life . . . [Bigelow's] request for genetic testing is barred by *stare decisis*." Trial Court Opinion, 9/18/23, at 8. **See Burke v. Pittsburgh Limestone Corp.**, 100 A.2d 595, 598 (Pa. 1953) ("*Stare decisis* simply declares that for the sake of certainty, a conclusion reached in one case should be applied to those which follow, if the facts are substantially the same, even though the parties may be different."). Despite the trial court deciding the matter on the alternative bases of *stare decisis* and res judicata, today we affirm on the basis of paternity by estoppel, recognizing that a reviewing court may affirm the decision of the trial court if the result is correct on any ground without regard to the grounds relied upon by the trial court. **Butler v. De Lucca**, 478 A.2d 840, 843 (Pa. Super. 1984). Thus, we need not address Bigelow's final claim.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 06/14/2024