**Pamela DORAN n/k/a Pamela Smigiel, Appellant,**

v.

**William J. DORAN, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 14, 2003.

Filed March 28, 2003.

Gregory S. Skibitsky, Pittston, for appellant.

Elliot B. Edley, Wilkes Barre, for appellee.

BEFORE: STEVENS, GRACI, and OLSZEWSKI, JJ.

OPINION BY GRACI, J.:

¶ 1 Appellant, Pamela Doran, now known as Pamela Smigiel ("Smigiel"), appeals from the order entered on June 13, 2002 in the Court of Common Pleas of Luzerne County, granting the petition filed by Appellee, William Jr. Doran ("Doran"), to dismiss a child support order but denying the request for an award in the amount of the previously paid support. After careful review, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

¶ 2 In its decision, the trial court provided the background of this case as follows:

This matter [came] before the [trial court] on a petition, filed by the Defendant, William J. Doran, to dismiss a child support obligation based upon an agreement of support dated August 24, 1994, and made an Order of Court on August 31st of that year. The Defendant's Petition to Dismiss was filed October 26, 2001, nearly eleven and one-half years after the birth of the child for whom he pays support.

During the course of the parties' marriage, and while the parties were cohabiting as husband and wife, a child was conceived. William Doran, Jr. was born on March 19, 1990. Nearly four years later, Pamela Doran, now known as Pamela Smigiel, filed a Complaint in Divorce, after which the parties separated. A Divorce Decree was entered on May 12, 1995, just before the child's fifth birthday. After separating, the parties entered into a support agreement on August 24, 1994, whereupon the husband became obligated to pay child support. Unbeknownst to the husband, and for over a decade thereafter, at the time the child was conceived, his wife had been having sexual relations with another man. Having no reason to suspect that the child was not his; the husband raised the child as his own, supporting him as any decent, responsible parent would.

In 1996, however, according to the testimony of the mother, the true biological father of the child, her former paramour, stopped at her ex-husband's house for reasons never explained. When Mr. Doran asked his ex-wife if Billy was his child, the mother told him, "Yes". (H.R.33–34). Satisfied with the answer,

Mr. Doran continued to support and treat Billy as his own child until late in the [sic] 2000 or early in 2001 when it became apparent to him that the child's appearance, mannerisms and other indicators gave him reason to believe that the child was nothing like him at all; prompting a second inquiry to his ex-wife of the child's paternity. (H.R.49, 55). Convincing his ex-wife to undergo DNA testing because of these suspicions, the results, issued March 14, 2001, proved conclusively that Mr. Doran was not the child's father. The probability of paternity was zero percent!

Not wanting to direct his anger or point any blame at the child who was, himself, going through a hailstorm of emotion and heartache at the time, Mr. Doran tried to convince his ex-wife that, together, they should sit down and talk with Billy. The mother, however, decided for the first time to tell her son the truth by herself. Shortly thereafter, Mr. Doran as gently as possible removed himself from the child's life in a way which he felt would cause the child the least amount of anguish and hurt.

In filing his Petition to Dismiss the support obligation, Mr. Doran argued[d] that under the devastating circumstances of this wife's infidelity, deception and intentional decision to keep the true facts surrounding the circumstances of the child's conception to herself, he was made a cuckold by her and mislead [sic] to believe that he was the biological father of the child—a fact which now has been scientifically disproved beyond doubt. To prevent any further injustice to him, he request[ed] that the ... child support order be dismissed and that he be entitled to recover all of the child support paid to his ex-wife...

Decision, 6/13/02, at 1–3.

¶ 3 On June 13, 2002, the trial court granted Doran's petition to dismiss the

child support order but denied his request for an award in the amount of the previously paid support.

¶ 4 On July 3, 2002, Smigiel filed a notice of appeal. Smigiel raises the following issues on appeal:

> Was it reversible error for the lower court to grant the petition to dismiss support matter filed by the appellee, where the parties' minor child, William Doran, Jr., was conceived and born during that period of time when the parties to the above captioned cause of action were still united in marriage and residing together as husband and wife and continued to do so for a period of almost four (4) years subsequent to the minor child's birth?

> * * *

> Was it reversible error for the lower court to grant the petition to dismiss support matter filed by the appellee, where the appellee, despite substantial and compelling evidence that the appellee maintained suspicions as to the minor child's paternity for many years, held the child out to the public as his son, nurtured and maintained a father/son relationship with the child for many years, and continued to do so by his own admission even after the appellee knew he was not the child's biological father?

> * * *

> Was it reversible error for the lower court to grant the petition to dismiss support matter filed by the appellee where the lower court's decision to do so is contrary to the established precedent relative to the doctrines of 'presumption of paternity' and 'estoppel' for purposes of paternity and/or support matters?

> * * *

Appellant's Brief, at 3.

## II. DISCUSSION

¶ 5 Smigiel essentially argues that the trial court should not have granted Doran's petition to dismiss child support since the presumption of paternity applies to the instant case. However, she further argues, if the presumption of paternity does not apply to the instant case, estoppel does.

 ¶ 6 "In matters involving support, a reviewing court will not disturb an order of the trial court unless there has been an abuse of discretion." *Diehl v. Beaver*, 444 Pa.Super. 91, 663 A.2d 232, 233 (1995) (citations omitted). "An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order." *Id.* (citations omitted). Moreover, "[r]esolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence." *Id.* at 234 (citations omitted). "It is not enough that we, if sitting as a trial court, may have made a different finding." *Id.*

¶ 7 In *Brinkley v. King*, 549 Pa. 241, 701 A.2d 176, 180 (1997), the Pennsylvania Supreme Court set forth the analysis required to determine the paternity of a child conceived or born during a marriage:

> [T]he essential legal analysis in these cases is twofold: first one considers whether the presumption of paternity applies to a particular case. If it does, one then considers whether the presumption has been rebutted. Second, if the presumption has been rebutted or is inapplicable, one then questions whether estoppel applies. Estoppel may bar either a plaintiff from making the claim or a defendant from denying paternity. If the presumption has been rebutted or

does not apply, and if the facts of the case include estoppel evidence, such evidence must be considered.

¶ 8 We must first determine if the presumption of paternity applies to the instant case. "The policy underlying the presumption of paternity is the preservation of marriages." *Fish v. Behers*, 559 Pa. 523, 741 A.2d 721, 723 (1999). "The presumption only applies in cases where that policy would be advanced by the application; otherwise, it does not apply." *Id.* (citation omitted). In this case, there is no longer an intact family or a marriage to preserve. Smigiel and Doran separated and a divorce action was pending prior to the hearing in the support matter instituted by Smigiel against Doran. Accordingly, the presumption of paternity is not applicable.

¶ 9 Having concluded that the presumption is inapplicable, we must determine whether Doran is estopped from denying paternity. "A (former) husband may be estopped from denying paternity of a child born during a marriage if either he or his wife holds the child out to be the child of the marriage." *Weidman v. Weidman*, 808 A.2d 576, 577–78 (Pa.Super.2002) (citation omitted).

> Estoppel in paternity actions is merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at "achieving fairness as between the parents by holding them, both mother and

father, to their prior conduct regarding the paternity of the child."

*Fish*, 741 A.2d at 723 (citation omitted).

¶ 10 In the instant case, Doran admitted that he held the child out as his own from the child's birth in 1990 until DNA testing excluded him as the father in March 2001. Doran testified that when the divorce was finalized, in May 1995, through June 2001, he exercised visitation with the child and continued to support the child. Doran also stated that he continued to see the child after the DNA testing excluded him as the father. Therefore, it appears that Doran is estopped from denying his paternity.

¶ 11 Nevertheless, Doran argues that Smigiel's fraudulent conduct was the basis for his treating the child as his own; therefore, estoppel is precluded. Specifically, Doran argues that Smigiel assured him that he was the natural father and deceived him by failing to inform him of the truth of her unfaithfulness when he first had doubts about his paternity.

¶ 12 "[W]hen allegations of fraud arise in a paternity action, an estoppel analysis must proceed in a different manner than it would without such averments." *McConnell v. Berkheimer*, 781 A.2d 206, 211 (Pa.Super.2001) (citation omitted). Evidence of fraud "must be considered by the trial court in whether to apply paternity by estoppel." *Sekol v. Delsantro*, 763 A.2d 405, 410 (Pa.Super.2000) (citation omitted).

> The presumption that a child born during a marriage is a child of the marriage and the doctrine of paternity by estoppel grew out of a concern for the protection of the family unit; where that unit no longer exists, it defies both logic and fairness to apply equitable principles to perpetuate a pretense. In this case, application of estoppel would punish the party that sought to do what was righ-

teous and reward the party that has perpetrated a fraud.

*Id.* (citations omitted). "The test for fraud is: (1) a misrepresentation, (2) a fraudulent utterance, (3) an intention by the maker that the recipient will thereby [be] induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as a proximate result." *Id.* at 411 n. 7 (citation omitted).

¶ 13 In its decision, the trial court found that:

... Mr. Doran had been operating for more than a decade under the misrepresentation that he was, indeed, the child's father. This subterfuge was a direct result of the mother's intentional misstatements and deceptions to him. She deluded herself by refusing to even consider that her child might be fathered by the man with whom she had an illicit affair. She never once mentioned her meretricious relationship with this third party to her husband. Instead, she fallaciously led him to believe, at the same time she was seeking child support from him, that he was, in fact, the child's father. Had she been forthright to her spouse and explained what she had done at the time of the child's conception, her husband may certainly have acted differently. Unfortunately, her deceit, falsehoods and misrepresentations gave Mr. Doran no reason but to treat the child as his own—with love, care and respect, as only a decent human being would do under the circumstances.

Decision, 6/13/02, at 5–6.

¶ 14 As we stated above, "[i]n matters involving support, a reviewing court will not disturb an order of the trial court unless there has been an abuse of discretion." *Diehl,* 663 A.2d at 233 (citations omitted). "An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient

evidence to sustain the order." *Id.* (citations omitted). "Resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence." *Id.* at 234 (citations omitted). "It is not enough that we, if sitting as a trial court, may have made a different finding." *Id.*

¶ 15 Based on our limited standard and scope of review, we affirm. We hold that the trial court's factual findings are supported by competent evidence which is sufficient to sustain the trial court's order. Smigiel testified that she had sexual relations with Doran and another man at the time that the child was conceived. When Doran became suspicious in 1996 that the child was not his, she assured him that it was even though she did not know for sure. It was not until 2001, when Doran questioned her again, that she finally admitted that she was not sure and agreed to the DNA testing. We, therefore, find that the trial court did not abuse its discretion in granting Doran's petition to dismiss the support order.

### III. CONCLUSION

¶ 16 Because a divorce action was pending between Doran and Smigiel at the time Smigiel first filed for child support, there was no longer an intact family or marriage to preserve, and, therefore, the presumption of paternity is inapplicable to the present case. However, our review of the record indicates that Doran held the child out as his own from the child's birth until learning the results of the DNA testing in 2001. Nevertheless, further review of the record leads us to find that Doran would not have held the child out as his own had it not been for Smigiel's fraudulent conduct. Doran, therefore, is not estopped

from denying paternity of the child born during his marriage to Smigiel.

¶ 17 Since the trial court did not abuse its discretion in granting Doran's petition to dismiss the child support order, we affirm.

¶ 18 Order affirmed.