J-S37032-14

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| N.S.M., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.R.M., | |
| Appellee | No. 298 MDA 2014 |

Appeal from the Order entered December 16, 2013,
in the Court of Common Pleas of Dauphin County,
Domestic Relations Division, at No(s): 0498-DR-00

BEFORE: LAZARUS, STABILE and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:          **FILED AUGUST 28, 2014**

N.S.M. ("Mother") appeals from the Order dismissing her Complaint in Support against J.R.M. ("Former Husband") for support of female child, T.N.M. ("Child") (d/o/b 3/10/99), cancelling all arrears owing for the Child, and ordering a refund of any funds held in escrow. We reverse and remand for further proceedings.

The parties, who were previously married, have been involved in lengthy child support proceedings with regard to Child since 2000. On October 2, 2012, Former Husband filed a Petition for Genetic Testing. On November 6, 2012, the trial court entered an Order directing Former Husband, Mother, and Child to participate in genetic testing. The Order further directed that all funds for Child be placed in escrow pending the

results of the genetic testing. The trial court also scheduled a hearing on the issue of paternity by estoppel for May 23, 2013.

The trial court set forth the relevant testimony presented at the hearing:

> [Mother] and [Former Husband] were married on March 22, 1997 and divorced on July 24, 2003. [Paternity Hearing, Notes of Testimony, May 23, 2013, p. 6]. One child was born during the marriage [Child,] and another [male] child was born prior to the parties' marriage (T.M., DOB 11-__-96). [N.T., 5-23-13, pp. 6-7]. [Former Husband] testified that at the time of [Child's] conception (May or June of [1998]), he was in Giessen, Germany and was serving in the United States Army. [*Id.* at 7]. [Mother] was in Harrisburg at the time of [Child's] conception. [*Id.*] [Former Husband] testified that he came back from Germany during one week[,] July of 1999, for a friend's funeral. [*Id.* at 8]. Initially, [Former Husband] did not question paternity, as he "was just happy to be a father and . . . didn't put any thought into the actual time period of conception." [*Id.* at 8-9]. The parties separated in October or November of 1999. [*Id.* at 10]. At one point before the separation, [Former Husband] questioned whether the baby was his, and [Mother] responded, "How could it not be?" [*Id.* at 9-10]. [Former Husband] said he "left it at that." [*Id.* at 9]. When asked about his relationship with [Child], [Former Husband] responded that they "had an okay relationship, but due to the age and some custodial issues. . ., we haven't grown into the best [*sic*]." [*Id.* at 10]. [Former Husband] also testified that, outside of visitations and weekends, [] he has not had consistent custodial time with [Child], and that [Mother's] compliance with the custody [O]rder was adhered to in the beginning, but slowly tapered off. [*Id.* at 10-11]. When asked at the May [2013] hearing when he last saw [Child], [Former Husband] answered that he had spoken to her for four or five minutes three days ago when he took his other daughter to see a friend and, before that, it had been sometime last November. [*Id.* at 11].
>
> In 2011, during a custody dispute between the parties, the parties discussed whether they should go for paternity testing. [Mother] claimed it was the first time that they spoke of the situation in thirteen years. [*Id.* at 11, 20]. The testimony

- 2 -

reveals that [Mother] went ahead … with DNA testing, and alerted [Former Husband] that [Child's] biological father was actually [S.C.], a long-time family friend. [*Id.* at 11-13, 20-22]. [Former Husband] stated that once the subject came to light, he became aware that both children talked about [S.C.]. When asked if [Former Husband] knew if [S.C.] had a relationship with [Child], [Former Husband] said, "[H]e has actually been a very good guy from what I understand, as far as stepping in and being there for her in the situation. I know in October of this past year, 2012, I actually had a scheduled visitation, and [Child] was not there . . . because she went with [S.C. to] one of his children's birthdays." [*Id.* at 13-14].

[Mother] testified that she and [S.C.] were childhood friends, that she always knew he could possibly be [Child's] father, and [that] he has a relationship with [Child]. [*Id.* at 17, 20-22]. She stated that [S.C.'s] whole family has a better relationship with [Child], and averred that [S.C.] has taken a "grand approach" in getting to know her better in light of the discovery that he is [Child's] biological father. [*Id.* at 17-18]. When asked if the result of the genetic testing has affected his ability to have a parental relationship with [Child], [Former Husband] answered yes. He also testified that, at the time of the hearing, he had no parental relationship with [Child]. [*Id.* at 28].

[Mother] stated that [Former Husband] did not fraudulently enter into the parental situation, that he was aware at the time of the pregnancy that he may not have been the biological father, that he acted as her father, continued to raise her, and supported her. [*Id.* at 26].

At the close of the hearing, [the trial court] found in favor of [Former Husband]. [*Id.* at 30]. It was agreed that both parties be scheduled for genetic testing. [*Id.*] *See* Order to Appear for Genetic Testing, dated 6-10-13. The genetic[] test results, dated July 10, 2013, reflect that [Former Husband] was excluded as the father of [Child]. The DNA Test Report indicated that [Former Husband's] probability of paternity was 0%.

Trial Court Opinion, 3/24/14, at 1-3 (footnote omitted).

Subsequently, on July 29, 2013, Former Husband filed a Petition to Dismiss the Complaint in Support against him. The trial court entered a Rule to Show Cause with regard to the Petition on July 30, 2013. On August 14, 2013, Mother filed an Answer to the Rule. On December 16, 2013, the trial court convened a hearing on Former Husband's Petition to Dismiss, but did not take any testimony. Thereafter, the trial court entered an Order granting Former Husband's Petition, and dismissed the Complaint in Support. The trial court directed that all arrearages owing for Child were to be cancelled, and any funds on hold in escrow were to be refunded to Former Husband.

On January 8, 2014, Mother filed a Notice of Appeal, but she failed to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). Mother also included a request for a transcript of the hearing from December 16, 2013, and a Petition for Leave to Proceed *in forma pauperis*.

On January 28, 2014, the trial court denied Mother's Petition for *in forma pauperis* status, finding that Mother's monthly household income exceeded the guidelines of the United States Department of Health and Human Services. Following the denial, Mother paid $73.50 for filing her Notice of Appeal, but she did not pay for the preparation of a transcript. Accordingly, the certified record does not include a certified copy of the

notes of testimony from the hearing held on December 16, 2013.[1]  On March

18, 2014, Mother's current counsel, Tabetha A. Tanner, Esquire, entered her

appearance, and filed a Concise Statement on behalf of Mother.[2]

In her brief on appeal, Mother raises the following issues:

I. Did the trial court abuse its discretion in dismissing the [C]omplaint for support and canceling the arrears/refunding the escrow?

II. Did the trial court exercise manifestly unreasonable judgment in failing to hear testimony on the best interest of the [C]hild when [Mother] argued that paternity by estoppel applied under the circumstances?

III. Did the trial court abuse its discretion and/or misapply the law in determining that a DNA test alone was dispositive of the issue of paternity and support?

---

[1] Although Mother requested the notes of testimony from the December 16, 2013 hearing, she did not pay for the transcript, so it is not included in the certified record.  *See* Pa.R.A.P. 1911(a) (requiring an appellant to order and pay for any transcript necessary to permit resolution of the issues raised on appeal).  As a reviewing Court, we are limited to a review of the certified record.  *See Commonwealth v. Preston*, 904 A.2d 1, 7 (Pa. Super. 2006) (*en banc*) (stating that "[w]hen the appellant or cross-appellant fails to conform to the requirements of Rule 1911, any claims that cannot be resolved in the absence of the necessary transcript or transcripts must be deemed waived for the purpose of appellate review.").  However, as there is no dispute regarding what occurred at the hearing on December 16, 2013, we do not deem Mother's claims waived and will review her issues on appeal.

[2] Mother's failure to file the Concise Statement simultaneously with her Notice of Appeal is not fatal to her appeal.  We can discern no prejudice to Former Husband from Mother's late-filed Concise Statement, and neither this Court nor the trial court directed Mother to file a Concise Statement.  *See In re K.T.E.L.*, 983 A.2d 745, 747 (Pa. Super. 2009) (finding that the appellant's failure to simultaneously file a Rule 1925(b) statement did not result in waiver of all issues for appeal where the appellant later filed the statement, and there was no allegation of prejudice from the late filing).

Mother's Brief at 4.[3]

Our standard of review in this child support matter is as follows:

> In matters involving support, a reviewing court will not disturb an order of the trial court unless there has been an abuse of discretion. An abuse of discretion exists if the trial court misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough that we, if sitting as a trial court, may have made a different finding.

**Doran v. Doran**, 820 A.2d 1279, 1282 (Pa. Super. 2003) (quotations omitted). When evaluating a support order, this Court may only reverse the trial court's determination where the order cannot be sustained on any valid ground. **R.K.J. v. S.P.K.**, 77 A.3d 33, 37 (Pa. Super. 2013).

As Mother's issues on appeal are interrelated, we will address them together. Mother contends that the trial court abused its discretion in dismissing the Complaint in Support, canceling the arrears, and refunding the escrow to Former Husband because it refused to apply the doctrine of paternity by estoppel. Mother's Brief at 15-19. Mother argues that the facts developed at the hearing on May 23, 2013, were not sufficient for the trial

---

[3] We observe that Mother stated her issues somewhat differently in her Concise Statement. This Court could conclude that Mother waived her second and third arguments on appeal in that she set forth her issues differently in her Concise Statement and her brief. However, Mother's second and third issues are suggested by her Concise Statement and, therefore, we will review them on appeal. **See Krebs v. United Ref. Co. of Pennsylvania**, 893 A.2d 776, 797 (Pa. Super. 2006) (stating that any issue not set forth in or suggested by a concise statement of errors complained of on appeal and the statement of questions involved section in the appellate brief is deemed waived); **see also** Pa.R.A.P. 2116.

court to render a decision on paternity by estoppel, as the May 2013 hearing focused on whether to order genetic testing, and that the trial court should have taken further testimony at the hearing on December 16, 2013. *Id*. at 19-22. Mother asserts that even with the minimal record, it was not in Child's best interests to dismiss Former Husband's support obligation as Former Husband acknowledged that he may not have been the biological father when Child was born, but continued to hold himself out to Child and the community as Child's father for over 12 years; he agreed to pay child support for numerous years following the separation; he asked for additional time with Child in the custody proceedings; he recently told Child that he was her father; Child is hurt by Former Husband's actions in refusing to have a relationship with her; and Child has an insignificant relationship with S.C. *Id*. at 17, 18, 22-23. Mother further claims that the trial court erred in dismissing Former Husband's support obligations based solely upon the DNA testing results. *Id*. at 19, 24-25.

Recently, our Supreme Court addressed the application of paternity by estoppel in *K.E.M. v. P.C.S.*, 38 A.3d 798 (Pa. 2012).[4] In *K.E.M.*, the child's mother sought child support from the alleged biological father. *K.E.M.*, 38 A.3d at 799. The trial court, however, held that the mother's husband, H.M.M., the putative father, should be regarded as the child's

---

[4] The presumption of paternity is inapplicable in this case as there was no intact marriage to preserve. *See K.E.M.*, 38 A.3d at 806-07.

father for purposes of child support via the doctrine of paternity by estoppel. *Id.* at 800, 803. On appeal, the Superior Court affirmed the trial court's application of the doctrine of paternity by estoppel. *Id.* at 802-03. The Supreme Court of Pennsylvania granted allowance of appeal "to consider the application of the doctrine of paternity by estoppel in this case, and, more broadly, its continuing application as a common law principle." *Id.* at 803.

In discussing the continued viability of the paternity by estoppel doctrine, the *K.E.M.* Court acknowledged that a role remains for the doctrine in Pennsylvania common law, "in the absence of definitive legislative involvement." *Id.* at 807. The Supreme Court stated the following:

> Absent any overriding equities in favor of the putative father, such as fraud, the law cannot permit a party to renounce even an assumed duty of parentage when by doing so, the innocent child would be victimized. Relying upon the representation of the parental relationship, a child naturally and normally extends his love and affection to the putative parent. The representation of parentage inevitably obscures the identity and whereabouts of the natural father, so that the child will be denied the love, affection and support of the natural father. As time wears on, the fiction of parentage reduces the likelihood that the child will ever have the opportunity of knowing or receiving the love of his natural father. While the law cannot prohibit the putative father from informing the child of their true relationship, it can prohibit him from employing the sanctions of the law to avoid the obligations which their assumed relationship would otherwise impose.

*Id.* at 807-08 (citation omitted). The *K.E.M.* Court stated that "[t]he operative language of this passage centers on the best interests of the child, and we are of the firm belief—in terms of common law decision making—that

- 8 -

this remains the proper, overarching litmus, at least in the wider range of cases." *Id.* at 808.

The *K.E.M.* Court then observed that "some legal parents simply will not fulfill their nurturing and/or financial support obligations" for various reasons. *Id.* at 809. In light of that, the Court stated that a determination of paternity by estoppel "should be better informed according to the actual best interests of the child, rather than by rote pronouncements grounded merely on the longevity … of parental relationships." *Id.* However, the Court further stated that if there is no difference in the supportive relationship between the putative and biological fathers, "we conclude that the responsibility for fatherhood should lie with the biological father." *Id.* at 810.

The Supreme Court indicated that the record in that case was "very sparse in terms of [the child's] best interests … [and] offer[ed] very little feel for the closeness of [the child's] relationship with H.M.M." *Id.* Further, the Supreme Court had "no sense for the harm that would befall [the child] if H.M.M.'s parental status were to be disestablished, either fully or … partially." *Id.* The Supreme Court concluded that paternity by estoppel "continues to pertain in Pennsylvania, but it will apply only where it can be shown, on a developed record, that it is in the best interests of the involved child." *Id.* at 810. The *K.E.M.* Court accordingly remanded the case to the

trial court for further proceedings to determine whether the dismissal of the support claim was proper. *Id.*

This Court addressed the applicability of paternity by estoppel, as explained in *K.E.M.*, in *R.K.J., supra*. In *R.K.J.*, S.P.K., and the subject six-year-old child's mother, R.K.J., had an "on again off again" relationship for two years prior to the child's birth, while the mother was married to another man. *R.K.J.*, 77 A.3d at 35. Following R.K.J.'s separation from her husband and subsequent divorce, S.P.K. lived with R.K.J. and child for six years after the child's birth. *Id.* S.P.K., while acknowledging child was not his biological child, held child out as his own and claimed child as a dependent on his tax returns. *Id.* After S.P.K. and R.K.J. broke up, R.K.J. then sought support for the child from S.P.K. *Id.* The trial court found that S.P.K. was the father of the child by the doctrine of paternity by estoppel and, subsequently, ordered S.P.K. to pay child support. *Id.* at 35-36.

On appeal, this Court recognized the five factors set forth in *K.E.M.* as relevant to the child's best interests in a support matter involving a question of paternity by estoppel:

> (1) a party cannot renounce an assumed duty of parentage when the innocent child would be victimized; (2) the law can prohibit a putative father from employing sanctions of the law to avoid the obligations that his assumed relationship with the child would impose; (3) the closeness of the child's relationship to the putative father; (4) the harm that would befall the child if the putative father's parental status were to be disestablished; and (5) the need for continuity, financial support, and potential psychological security arising out of an established parent-child relationship.

- 10 -

*R.K.J.*, 77 A.3d at 38. This Court concluded that the trial court did not err in applying the doctrine of paternity by estoppel, as S.P.K. had functioned as the six-year-old child's father; held himself out as the child's father; lived and interacted with the child for nearly six years; told the child he was the child's father, financially supported the child; and the child's biological father had no relationship with the child and had never lived with the child. *Id.* at 39-42.

Here, the trial court disagreed that the paternity by estoppel doctrine should be applied to Former Husband and made the following determination based on its factual findings:

> In light of the record, and considering the [C]hild's best interests, there is ample evidence for [the trial c]ourt's decision to not apply paternity by estoppel and to dismiss the [C]omplaint [in S]upport. Th[e trial c]ourt found the testimony of [Former Husband] credible. While [Former Husband] acted as [Child's] father and attempted a father-daughter relationship, he did not enjoy consistent custodial time with [Child], and has not had a parental relationship with her for some time. Although [S.C., Child's] biological father, did not raise [Child], he is a close family friend. [Child] has a relationship with [S.C.], as she does with [S.C.'s] children and family. The testimony reflects that [S.C.] has taken [Child] to sporting events and dinners, and has made a great effort in taking further steps in getting to know [Child] since he found out he is her biological father. [S.C.'s] actions reveal his position as a parental figure in [Child's] life.
>
> Consequently, t[he trial c]ourt finds no difference in the supportive relationship available from [Child's] "psychological father," [Former Husband], and her biological father, [S.C.]. … As such, there was no abuse of discretion in the determination to dismiss [Mother's] [C]omplaint in [S]upport. …

Trial Court Opinion, 3/24/14, at 5-6.

It appears from the record that the trial court made efforts to consider the best interests of Child, and determined that the application of paternity by estoppel to hold Former Husband responsible for further support of Child was not in Child's best interests. However, there was no testimony presented regarding Child's opinions about Former Husband's status as her father in light of the facts that Former Husband acted as Child's father for over 12 years; sought custody of Child; told the Child he was Child's father; and financially supported Child. Furthermore, other than Mother's testimony regarding S.C.'s recent role in Child's life, there was no competent evidence to demonstrate that S.C. sought to take responsibility for Child's emotional and financial needs or establish Child's overall closeness with S.C.[5] *See R.K.J.*, 77 A.3d at 38 (setting forth the factors relevant in determining the best interests of child in matters involving paternity by estoppel). As a result, we have no sense of the harm that would befall Child if Former Husband's parental status were to be fully disestablished. *See K.E.M.*, 38 A.3d at 810. Accordingly, as in *K.E.M.*, we will not dismiss Former Husband's support obligation without a closer assessment of Child's best interests.

Order reversed. Case remanded for further proceedings consistent with this Memorandum. Jurisdiction relinquished.

---

[5] We note that neither Child nor S.C. testified at the May 23, 2013 hearing.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/28/2014</u>