J-S13015-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| CRAWFORD COUNTY CHILDREN AND YOUTH SERVICES | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | |
| J.B.W. | |
| v. | |
| C.G. | |
| Appellant | No. 1106 WDA 2015 |

Appeal from the Order June 23, 2015
In the Court of Common Pleas of Crawford County
Domestic Relations at No(s): DR 2014-296

BEFORE:  LAZARUS, J., STABILE, J., and FITZGERALD, J.[*]

MEMORANDUM BY LAZARUS, J.:                    **FILED APRIL 11, 2016**

Appellant, C.G., who claims to be the natural father of B.G. (child), appeals from the June 23, 2015 order of the Court of Common Pleas of Crawford County.  That order stated the presumption of paternity was irrebuttable and Mother's husband, J.B.W., was the presumptive father. C.G. challenges the court's finding that there was an intact family; he also challenges the constitutionality of the presumption on equal protection grounds.  After our review, we affirm.

Crawford County Children and Youth Services (CCCYS) filed a support action against J.B.W. with respect to two children in placement, J.W., Jr.,

_____

[*] Former Justice specially assigned to the Superior Court.

and B.G. C.G. sought to intervene, claiming he was the biological father of B.G. C.G. requested a hearing, claiming that there was no intact family and thus the presumption of paternity was rebuttable. The Honorable Anthony J. Vardaro held a hearing on December 3, 2014. The court determined that C.G. did not meet his burden of rebutting the presumption by clear and convincing evidence, and found that J.B.W. was married to Mother at the time of conception and birth and that they remained in an intact relationship. The court concluded, therefore, that the presumption was irrebuttable. The court entered an order finding J.B.W. was the presumptive father, and C.G. appealed. C.G. raises the following issues for our review:

1. Did mother and her husband and the child have an intact family, which precluded natural father from being permitted to rebut the presumption of paternity?

2. Is the presumption of paternity unconstitutional in that it deprives a child born to a married woman of its father while allowing a child born to a single woman to have its father?

3. Is the presumption of paternity unconstitutional in that it deprives a child born to a married woman of its father while allowing a child born to a married man to have its father?

4. Is the presumption of paternity unconstitutional in that it deprives a man of his paternity based on the marital status of the mother while allowing a mother to have her maternity regardless of the marital status of the father?

We first point out our standard of review. We will not disturb the trial court's order unless there has been an abuse of discretion. ***See Doran v. Doran***, 820 A.2d 1279, 1282 (Pa. Super. 2003).

- 2 -

An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough that we, if sitting as a trial court, may have made a different finding.

*Id.* (quotation marks, citations, and brackets omitted).

In *Brinkley v. King*, 701 A.2d 176 (Pa. 1997) (plurality opinion), the Pennsylvania Supreme Court explained the presumption of paternity as follows:

[G]enerally, a child conceived or born during the marriage is presumed to be the child of the marriage; this presumption is one of the strongest presumptions of the law of Pennsylvania; and the presumption may be overcome by clear and convincing evidence that the presumptive father had no access to the mother or the presumptive father was physically incapable of procreation at the time of conception. *However, the presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage.* [Emphasis added.]

*Id.* at 179 (emphasis added). The preservation of marriages is the purpose of the presumption of paternity. *See Fish v. Behers*, 741 A.2d 721, 723 (Pa. 1999). The presumption renders blood test results irrelevant unless and until the presumption is overcome. *See Strauser v. Stahr*, 726 A.2d 1052, 1054 (Pa. 1999). "*[T]he presumption is irrebuttable when a third party seeks to assert his own paternity as against the husband in an intact marriage.*" *C.W. v. L.V.*, 788 A.2d 1002, 1005 (Pa. Super. 2001) (emphasis added). The relevant time to examine whether the marriage is intact is at the time of the challenge to a husband's paternity, *Vargo v. Schwartz*, 940

A.2d 459, 463 (Pa. Super. 2007), and this is a question solely for the trial court sitting as fact-finder. *Id*. at 467.

The disposition of this matter turns on whether Mother and her husband, J.B.W., had an intact marriage at the time of C.G.'s challenge to J.B.W.'s paternity. C.G. was the only witness to testify at the hearing. He testified that he and Mother had an on and off relationship, and that at the time of B.G.'s conception, Mother and J.B.W. were separated and that Mother spent some time with him (C.G.), and some time with her mother. B.G. was conceived in February or March of 2013; C.G. testified that during this time Mother "stayed with me a couple nights[.] . . . I can't be exact, 100 percent certain, but right around that time." N.T. Paternity Hearing, 6/15/15, at 15. At the time of B.G.'s birth, Mother and J.B.W. were back together, and when Mother brought B.G. home from the hospital, she brought her to her residence with her husband, J.B.W. *Id*. at 8. C.G. acknowledged that at the time of the hearing, the child was living with Mother and J.B.W. *Id.* at 13. Thus, the court found that Mother and J.B.W. were married before the birth of B.G., were married at the time of B.G.'s conception, and, as of the time of C.G.'s challenge and the paternity hearing, remained married. The court also found that C.G. had failed to prove by any quantum of evidence that J.B.W. had no access to Mother or was impotent. (Trial Court Opinion, 7/21/14 at 10–11.) As a result, the presumption of paternity is irrebuttable. *Vargo*, 940 A.2d at 463.

Our review of the record supports the trial court's findings. We find no abuse of discretion. *Doran*, *supra*. Even if the presumption were rebuttable, C.G. failed to rebut the presumption. The presumption may be overcome by clear and convincing evidence that either of the following circumstances was true at the time of conception: the presumptive father was physically incapable of procreation because of impotency or sterility or the presumptive father had no access to wife. As stated above, C.G. failed to present any evidence, let alone clear and convincing evidence, of either circumstance. The law is clear that, absent such circumstances, the presumption of paternity continues to apply. *Vargo*, *supra*. *See also* *B.S. and R.S. v. T.M.*, 782 A.2d 1031, 1034 (Pa. Super. 2001) (although presumption may be rebutted by clear and convincing evidence of husband's non-access, impotency, or sterility, presumption is irrebuttable where mother, child, and husband live together as intact family and husband assumes parental responsibility for the child).

C.G. also challenges the presumption of paternity on equal protection grounds.[1] He argues the presumption of paternity is unconstitutional in that it deprives a man of his paternity based on the marital status of the mother while allowing a mother to have her maternity regardless of the marital status of the father.

_____

[1] We need not address issues 2 or 3 because C.G. has no standing to raise equal protection on behalf of a child.

C.G. does have not standing to assert an equal protection claim grounded on paternity. Due process and equal protection principles confer standing on C.G. to rebut the presumption of paternity; however, having failed to do so, there has been no legal determination of his paternity. Therefore, C.G. has no constitutionally protected interest. *See Fausey v. Hiller*, 851 A.2d 193 (Pa. Super. 2004), citing *Troxel v. Granville*, 530 U.S. 57, 67, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000) (right of parents to make decisions about upbringing of their children is fundamental right).

We also point out that there are other interests at stake in this case besides those of C.G, the putative father and intervenor, and J.B.W., the presumptive father. Our Supreme Court has stated:

> Obviously, the needs and interests of the Child are of paramount concern, and the needs and interests of [Mother] are on a par with the "putative" and "presumptive" fathers. There is, in short, a family involved here. A woman and a man who have married and lived together as husband and wife, giving birth to and raising [a child], have obvious interests in protecting their family from the unwanted intrusions of outsiders (even ones who have had serious relationships with the mother, father or children). The Commonwealth recognizes and seeks to protect this basic and foundational unit of society, the family, by the presumption that a child born to a woman while she is married is a child of the marriage.

*John M. v. Paula T.*, 571 A.2d 1380, 1386 (Pa. 1990), citing *Commonwealth ex rel. O'Brien v. O'Brien*, 136 A.2d 451 (Pa. 1957). "Whatever interests the putative father may claim, they pale in comparison to the overriding interests of the presumed father, the marital institution and the interests of this Commonwealth in the family unit. These interests are

- 6 -

the cornerstone of the age-old presumption and remain protected by the Commonwealth today." ***John M.***, 571 A.2d at 1388-89 (Nix, C.J., concurring).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  4/11/2016