J-S41045-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| R.C.R., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| J.D.S., | |
| Appellant | No. 3659 EDA 2015 |

Appeal from the Order Entered October 23, 2015,
in the Court of Common Pleas of Lehigh County, Domestic Relations at
No(s): DR-15-00779, PSCES No. 299115305

BEFORE:  BENDER, P.J.E., DUBOW, J., and STEVENS, P.J.E.*

MEMORANDUM BY STEVENS, P.J.E.:              **FILED JUNE 27, 2016**

Appellant, J.D.S. ("Father"), appeals from the order entered on October 23, 2015, in the Lehigh County Court of Common Pleas by the Honorable President Judge Edward D. Reibman, which dismissed his petition for rescission of acknowledgement of paternity ("AOP").  We affirm.

O.S. ("Child") was born in May of 2013.  Father and R.C.R. ("Mother") were never married.  Following Child's birth, Father signed an AOP.  On May 21, 2015, Mother filed a complaint for support.  On June 19, 2015, Father filed a petition for rescission of AOP and alleged that, although he signed an acknowledgment of paternity for Child, the acknowledgment was the result of fraud, duress or material mistake of fact pursuant to 23 Pa.C.S.A. § 5103 (g)(2).  On August 19, 2015, a hearing was held on that petition at which

---

* Former Justice specially assigned to the Superior Court.

time Mother and Father testified. On October 23, 2015, the trial court denied Father's petition to rescind the acknowledgement of paternity.

On November 23, 2015, Father filed a notice of appeal, and on December 2, 2015, the trial court directed him to file a concise statement of errors complained of on appeal. Father filed a concise statement on December 14, 2015.[1]

Father raises the following issues for this Court's review:

1. Whether the trial court erred and abused its direction in failing to give proper weight to [Father]'s testimony that he believed he was the biological father during the time he signed the [AOP] form?

2. Whether the trial court erred in finding that there was no fraud on the part of [Mother] when [Mother] admitted she had concealed her affair until the end of her pregnancy and led [Father] to believe he was the biological father of [C]hild?

3. Whether the trial court erred in applying the doctrine of [p]aternity by [e]stoppel to dismiss [Father]'s [p]etition to rescind paternity because such paternity would not be in the best interests of [C]hild?

Father's Brief, at 2.

---

[1] In a children's fast track appeal, the appellant must file a concise statement of errors complained of on appeal contemporaneously with his notice of appeal. Pa.R.A.P. 1925(a)(2)(i). This requirement, however, is procedural rather than jurisdictional; a failure to comply is handled on a case-by-case basis. *In re K.T.E.L.*, 983 A.2d 745, 748 (Pa.Super. 2009). Mother has not objected or otherwise claimed she was prejudiced by Father's failure to file his Pa.R.A.P. 1925(b) statement concomitantly with his notice of appeal, and the record reflects that Father has complied with all other procedural requirements pertaining to his appeal. As such, we will not find Father's issues waived due to the delayed filing of his concise statement of errors complained on appeal. *Id*.

We employ the following standard of review concerning paternity questions:

> In matters involving support, a reviewing court will not disturb an order of the trial court unless there has been an abuse of discretion. An abuse of discretion exists if the trial court has overridden or misapplied the law, or if there is insufficient evidence to sustain the order. Moreover, resolution of factual issues is for the trial court, and a reviewing court will not disturb the trial court's findings if they are supported by competent evidence. It is not enough that we, if sitting as a trial court, may have made a different finding.

**Doran v. Doran**, 820 A.2d 1279, 1282 (Pa. Super 2003) (internal citations and quotations omitted).

Generally, a purported father does not have a statutory right to have his paternity determined in court, and he has no right to a trial on the issue of paternity. **See In re Estate of Greenwood**, 587 A.2d 749, 754 (Pa.Super. 1991) ("The statute ... provides a device affording both the father and mother the right to acknowledge paternity. The statute does not afford the father the right to come into court to have his paternity determined."); **Minnich v. Rivera**, 509 Pa. 588, 590, 506 A.2d 879, 880 (1986), **aff'd**, 483 U.S. 574, 107 S.Ct. 3001, 97 L.Ed.2d 473 (1987).

"Under the doctrine of paternity by estoppel, a putative father who is not a child's biological father is estopped from challenging paternity after he has held himself out as the child's father or provided support." **Ellison v. Lopez**, 959 A.2d 395, 397–98 (Pa.Super. 2008); **see also** 23 Pa.C.S. § 5102(b)(2).

In paternity actions, estoppel is:

merely the legal determination that because of a person's conduct (e.g., holding out the child as his own, or supporting the child) that person, regardless of his true biological status, will not be permitted to deny parentage, nor will the child's mother who has participated in this conduct be permitted to sue a third party for support, claiming that the third party is the true father. As the Superior Court has observed, the doctrine of estoppel in paternity actions is aimed at achieving fairness as between the parents by holding them, both mother and father, to their prior conduct regarding the paternity of the child.

*Doran*, 820 A.2d at 1282–83.

The relevant statute regarding acknowledging paternity provides, in pertinent part:

**§ 5103. Acknowledgment and claim of paternity**

**(a) Acknowledgment of paternity.**—The father of a child born to an unmarried woman may file with the Department of Public Welfare, on forms prescribed by the department, an acknowledgment of paternity of the child which shall include the consent of the mother of the child, supported by her witnessed statement subject to 18 Pa.C.S. § 4904 (relating to unsworn falsification to authorities). In such case, the father shall have all the rights and duties as to the child which he would have had if he had been married to the mother at the time of the birth of the child, and the child shall have all the rights and duties as to the father which the child would have had if the father had been married to the mother at the time of birth. The hospital or other person accepting an acknowledgment of paternity shall provide written and oral notice, which may be through the use of video or audio equipment, to the birth mother and birth father of the alternatives to, the legal consequences of and the rights and responsibilities that arise from, signing the acknowledgment.

* * *

**(d) Conclusive evidence.**—Notwithstanding any other provision of law, an acknowledgment of paternity shall constitute conclusive evidence of paternity without further judicial

ratification in any action to establish support. The court shall give full faith and credit to an acknowledgment of paternity signed in another state according to its procedures.

* * *

**(g) Rescission.**—

(1) Notwithstanding any other provision of law, a signed, voluntary, witnessed acknowledgment of paternity subject to 18 Pa.C.S. § 4904 shall be considered a legal finding of paternity, subject to the right of any signatory to rescind the acknowledgment within the earlier of the following:

(i) sixty days; or

(ii) the date of an administrative or judicial proceeding relating to the child, including, but not limited to, a domestic relations section conference or a proceeding to establish a support order in which the signatory is a party.

(2) *After the expiration of the 60 days, an acknowledgment of paternity may be challenged in court only on the basis of fraud, duress or material mistake of fact, which must be established by the challenger through clear and convincing evidence.* An order for support shall not be suspended during the period of challenge except for good cause shown....

23 Pa.C.S. § 5103 (emphasis added).

"When allegations of fraud arise in a paternity action, an estoppel analysis must proceed in a different manner than it would without such averments." *Doran*, 820 A.2d at 1279 (quoting *McConnell v. Berkheimer*, 781 A.2d 206, 211 (Pa. Super. 2001)). "[This Court will] not allow the application of estoppel to punish the party who sought to do what was righteous and reward the party who had perpetrated a fraud." *Glover v. Severino*, 946 A.2d 710, 714 (Pa. Super. 2008). "Evidence of fraud 'must be considered by the trial court in whether to apply paternity by

estoppel.'" **Doran**, 820 A.2d at 1279 (quoting **Sekol v. Delsantro**, 763 A.2d 405, 410 (Pa. Super. 2000)).

This Court has adopted the traditional elements of fraud established in Pennsylvania:

> (1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation, and (5) damage to the recipient as the proximate result.
>
> * * *
>
> Fraud is practiced when deception of another to his damage is brought about by a misrepresentation of fact or by silence when good faith required expression. Fraud comprises anything calculated to deceive, whether by single act or combination, or by suppression of truth, or suggestion of what is false, whether by direct falsehood or innuendo, by speech or silence, word of mouth, or look or gesture.

**R.W.E. v. A.B.K.**, 961 A.2d 161, 167–68 (Pa.Super. 2008) (emphasis deleted).

> Proof of fraud or misrepresentation precludes application of paternity by estoppel. Where ... there is no intact family unit to protect, the presumption of paternity does not apply. Whether the estoppel doctrine applies depends upon the particular facts of the case. Estoppel in paternity actions is based on the public policy that children should be secure in knowing who their parents are; if a person has acted as the parent and bonded with the child, the child should not be required to suffer the potentially damaging trauma that may come from being told that the father he has known all his life is not in fact his father.

**Gebler v. Gatti**, 895 A.2d 1, 3–4 (Pa. Super. 2006) (internal citations omitted).

In this case, Father acknowledges that more than sixty days have passed since he signed the AOP. Notwithstanding, Father argues that the trial court erred in applying the doctrine of paternity by estoppel and in doing so avers there was evidence of fraud on the record and that the evidence did not establish it was in Child's best interest to establish Father as Child's legal father. Father's Brief, at 5. Specifically, Father claims that while Mother informed him she had had sexual relations with another man around the time of conception, she did not reveal this information until the final trimester of the pregnancy, close to the time he signed the AOP. *Id*. at 8-10. In addition, Father reasons that Mother continued to lead him to believe there was a "chance" he was Child's father, and this failure to disclose "the true probabilities of paternity" to Father provided him with a "strong reason" to believe he was the biological father. *Id*. at 10-12.

Father testified that Mother told him when he signed the AOP that he was the biological father of Child. N.T. 8/19/15, at 3. Father stated that he was led to believe he was not the biological father of Child after Mother and Father ended their relationship in January of 2015. *Id.* at 3-4. Father later testified that while he and Mother were together, Mother told him she had had a relationship with another person. *Id.* at 8. Father explained that when Child was six months old, Father noticed features of Child's physical appearance to indicate that Child was not biologically his. *Id.* at 8-9. Yet, Father stated that thereafter, he continued to engage in a father-child

relationship with Child. *Id.* at 9. Moreover, Father testified that he did not make an effort to challenge Child's paternity when he noticed that Child might not be his because Father was "still together" with Mother. *Id.* at 9:

> I wanted to be his father, you know. I love that child, and when we broke up, she made it clear that, you know, he wasn't. And I did make an effort to get a paternity test, and she would not let me take [Child] because I just wanted to know for my own sake.

*Id.* Father stated he last saw Child in April of 2015. *Id.* at 9-10.

The trial court found:

> The parties were never married. [Child], born [in May of 2013], is more than two years old. According to [Mother], she told [Father] while she was pregnant with [Child] that he may not be the father. She told him she slept with another person around the time of conception. [Mother] testified, "I told [Father] everything. He knew the man's name from the time I had him. That it was a possibility."
>
> According to [Father], he and [Mother] were together from [Child]'s birth until they separated in January [of] 2015. He admitted [Mother] told him both before and after they separated he was not the father.
>
> Furthermore, [Father] submitted photographs of [Child], which showed [Child] is bi-racial, part white and part black. [Mother] and [Father] are white. [Father] admitted that within six months to a year of [C]hild's life, it became "obvious" by [C]hild's physical appearance that he was not the biological father of [C]hild. [Mother] testified when [C]hild was eight or nine months old, "when it was pretty apparent" [Father] was not the father, she gave [Father] "the chance to walk away."
>
> Despite all of that, [Father] admitted he did not investigate the identity of the alleged biological father until August [of] 2015, shortly before the hearing.
>
> [Father] also acknowledged that he maintained a father/son relationship with [C]hild from [C]hild's birth until he and [Mother] separated. He said "I, You know, was his father, I

was in his everyday life, took care of him, fed him, bathed him, all that stuff as well as she did." He also testified [C]hild identifies him as his father.

Trial Court Order, 10/21/15, 1-2.

In considering whether there was any record evidence of fraud before deciding to apply paternity by estoppel, the trial court found that Mother's testimony was credible and that Father was aware he might not be the father of Child when he signed the AOP. Indeed, Father did not attempt to rescind the AOP when he noticed biological difference between Father and Child when Child was six months old. Moreover, Father held himself out to be Child's father until Father and Mother ended their relationship in January of 2015. Further, he did not allege that he was fraudulently induced into signing the AOP until he was required to pay support and after Mother and Father's relationship ended. Thus, we find Father failed to rescind the AOP within 60 days, and he failed to show fraud as a reason to rescind it past the 60-day period. The trial court's findings of fact are supported by the record, and there is no abuse of discretion.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/27/2016

-9-